| 69 | 219 |
|-----|-----|
| 126 | 550 |

# Kann's Estate.   Lefever's Appeal.

1. One died seised of real estate, leaving a widow, and a daughter and son minors. On the application of the widow and the guardians of the minors, the land was sold under proceedings in partition in the Orphans' Court. The administrator settled his account and paid the daughter's share to her guardian. She afterwards married, and died in her minority without issue, her husband surviving. Held, that he was entitled to her share as personal estate.

2. The minor's share of the proceeds of the real estate, when paid to her guardian was in her hands as money.

3. Whether the Married Woman's Act of 1848 has not abrogated the 48th sect. of Act of March 29th 1832, authorizing the payment of the proceeds of the wife's real estate to the husband on giving security, Quære?

4. The 48th sect. of Act of 1832 does not apply to a woman unmarried

when the proceeds of the real estate vested in her, but married before its payment.

5. Dyer *v.* Cornell, 4 Barr 359; Walker *v.* De Haven, 14 Wright 101, approved.

May 24th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Orphans' Court of *York county :* Of May Term 1871, No. 101.

The facts of this case are as follows, viz. :—

Jacob Kann, Jr., died in October 1866, leaving a widow, and two children, Sarah and William, both of whom were minors. On the 13th of April 1867, C. S. Gerber was appointed guardian, &c., of Sarah, and Wendell Gross guardian, &c., of William. The decedent having died seised of certain real estate, upon the petition of the widow and the guardians, the Orphans' Court, on the 15th of June 1867, appointed commissioners to make partition. On the 23d of the same month the commissioners reported, that the land could not be parted without prejudice, &c., and valued it at $3826. On the same day the heirs having refused to accept the land at the valuation, an order was issued to the administrator of the decedent to sell the same on the following conditions : One-third of the purchase-money to be paid on the 1st of April 1868, one-third on the 1st of April 1869, and the remaining third to be secured on the land for the use of the widow and to be paid at her death to the parties entitled. On the 2d of September 1867, the administrator returned that he had sold the land for $3998.61, and the sale was confirmed. On the 1st of April 1868, the purchaser paid all the purchase-money, except the widow's share. On the 4th of April, the administrator filed his account showing in his hands a balance of $2023.44; about the same time he paid to Gerber as guardian of Sarah, $1011.72, being the whole amount of the purchase-money of the real estate due to her before the death of the widow. Afterwards on the 27th of August 1868, she married George Lefever, and died on the 8th of November 1868, a minor and without issue. Administration of her estate was granted to her husband, George Lefever. The guardian filed his account on the 9th of December 1868, showing in his hands a balance of $997.98, which was referred to D. J. Williams, Esq., as auditor for distribution.

Before the auditor this balance was claimed by Lefever as administrator, and in his own right as his wife's next of kin, as personal property. The guardian of William Kann, her brother, claimed it as still bearing the character of real estate and as having descended to him, subject to the life interest of his sister's husband.

The auditor in an exhaustive report decided that the fund was personal property and awarded it to Lefever.

The guardian of William Kann filed exceptions to the report.

[Kann's Estate.]

On the 27th of September 1870, the Orphans' Court (Fisher, P. J.) sustained the exceptions and decreed that the fund "be paid to the said George Lefever, upon his giving bond with surety, to be approved by this court, that the said amount, less the said costs, shall be paid at his death to William Kann, the heir of the said Sarah Lefever, deceased, or to his heirs or legal representatives, should he not survive the said George Lefever, and if such security be not given within thirty days from the date of this decree, the said money shall be paid over to a trustee to be appointed by this court, who shall invest the same under the direction of this court, and pay the interest thereof to the said George Lefever during his life, and pay the principal at his death to the said William Kann or his heirs or legal representatives, should he not survive the said George Lefever."

George Lefever, as administrator and in his own right as husband, appealed to the Supreme Court, and assigned the decree for error.

*V. Keasy* (with whom was *E. H. Weiser*), for appellant.—The 48th section of the Act of 29th of March 1832, Purd. 298, pl. 156, which enables the Orphans' Court to require security from a husband before money payable to his wife under proceedings in partition is paid to him, does not apply to the case of a female unmarried at the time of the partition: Quigley *v.* Commonwealth, 4 Harris 353.

After the surplus money of land sold for a specific purpose has vested in the party entitled, it is treated as personalty, and in case of his death goes to the next of kin: Pennock's Appeal, 8 Harris 268; Grider *v.* McClay, 11 S. & R. 224; Biggert *v.* Biggert, 7 Watts 563; Dyer *v.* Cornell, 4 Barr 359; Large's Appeal, 4 P. F. Smith 383.

They also cited an unreported case where the fund arose as this, and was paid to the guardian of a minor daughter; she afterwards married and died in 1847 a minor, leaving her husband and a child. It was held that the husband was entitled to the fund as administrator of his wife: Gilbert *v.* Garber, decided May Term 1848.

*J. L. Mayer*, for appellee.—The 48th section of the Act of 1832 is independent of the character of the fund, whether considered as converted into personalty or not: Hay's Appeal, 2 P. F. Smith 449; Commonwealth *v.* Haffey, 6 Barr 348. This section receives a strict construction against the claim of the husband: Beyer *v.* Reesor, 5 W. & S. 501, 503; Walter's Estate, 2 Wharton 246; Ferree *v.* Commonwealth, 8 S. & R. 315. The distribution of the fund by the court is an essential part of the proceeding: Robinson's Appeal, 12 P. F. Smith 213; Brooks *v.* Smyser, 12

Wright 86. That the money was handed over to the guardian before it was due, was an irregularity which could not alter the *succession*: Davis's Appeal, 10 P. F. Smith 118; Troutman's Appeal, 11 Harris 491; Williams's Appeal, 9 Barr 267. Under a sale of a minor's property in partition, there is no conversion into personalty to affect the succession: Holmes's Appeal, 3 P. F. Smith 339; Hill on Trustees, *396 n. 1, 4th edition; 2 Story's Equity, § 1357; Forman *v.* March, 1 Kernan 544.

The opinion of the court was delivered, October 9th 1871, by READ, J.—In Yohe *v.* Barnet, 1 Binney 358, a bond given for the purpart of the valuation of real estate, in a partition in the Orphans' Court, was held to be personal property, and as such became the property of the husband as the owner of his wife's share. " There is no ground for saying," said Chief Justice Tilghman, " that the share thus directed to be paid in money remains for any intent or purpose of the nature of real estate. It is converted completely into personal property."

The injustice of such a state of the law was strongly depicted by the revisers, and they reported what now forms the 48th section of the Act of the 29th March 1832, then a step in advance, but which would now be a retrograde one in the present condition of married women in relation to their personal property. This section provides, " when, upon any proceedings in the Orphans' Court, a sum of money shall be awarded by the court, for the share or portion to which a married woman may be entitled, such money shall not be paid to her husband, until he shall have given security to the satisfaction of the court, that the amount thereof, or so much thereof as the court shall deem proper, be paid after his death to his wife, or if she shall not survive him, to her heirs, as if the same were real estate." The remaining portion of this section is not material for our present purpose. At that day, the object was to prevent its becoming the property of the husband entirely, by making the payment to him conditional, giving him only the same interest as if it had remained real estate. It is a question whether the Married Woman's Act, and all our present legislation, have not virtually abrogated this provision. To-day the money would not be the property of the husband and to be paid to him, but the property of the wife and to be paid to her. If this entire change of policy has not affected this section it should be repealed by the legislature, as inconsistent with our present rules as to the property of married women. Be this as it may, it is clear the provision should not be carried beyond its express letter.

It does not apply to an unmarried female, which was the condition of Mrs. Lefever when this personal property vested in her.

The sale of the real estate of Jacob Kann, Jr., who died in

[Kann's Estate.]

October 1866, was made under proceedings in partition in the Orphans' Court, which was completed by the confirmation of the sale by the court, the execution and delivery of the deed to the purchase and the receipt of the purchase-money by the administrator, who filed an account of his administration in the register's office, under the Act of 11th April 1863, which was duly confirmed by the Orphans' Court, and the money actually paid over to the guardians of the infant heirs and releases executed. The money now in dispute was in the hands of C. S. Gerber, guardian of Sarah Kann, in April 1868, and of course in her hands really as money and not real estate. If she had been of age it would have been paid directly to her. Several months afterwards, on the 27th August 1868, she was married to George Lefever, and this personal property continued to be her property as fully after her marriage as before, and upon her death without issue on the 8th November 1868 her husband became entitled to it absolutely.

Three Acts of Assembly are however interposed to show that no conversion has taken place, but that the money paid over to the two guardians is not personal but real estate. The 19th section of the Act of 24th February 1834, was originally reported by the revisers as the 20th section of their bill relating to executors, administrators, &c., and was passed with a modification. " The 20th section," say the revisers, " is new to our jurisprudence, and we are not aware that a similar provision exists in any other code, although inconvenience, have been experienced from the present situation of the law, which seem to require some legislative interposition.

" It is a rule in equity which has been recognised and adopted in this state (see Grant v. Hook, 13 S. & R. 259), that the purchaser of real estate from an executor or other trustee, is bound under certain circumstances to look to the application of the purchase-money; consequently a vendee who has paid the money to such trustee, may, unless he has attended to this rule, be compelled to pay the money a second time to the parties interested in the trust. The result is often injurious to all parties, since the risk of liability for the improper application of the money tends to lessen the number of purchasers, and to reduce the value of the property. Yet we think it would not be safe to abolish the rule altogether, as it might endanger the security of infants and other beneficiaries, and we have suggested the payment of the money into the Orphans' Court, as a means of relief to the purchaser, while it sufficiently provides for the safety of the fund, and its due application according to the directions of the court, who will have the power to require the necessary security from the executor or administrator before authorizing him to receive the money."

" Under the impression that this provision will be advantageous

[Kann's Estate.]

to the community in a class of cases of frequent occurrence, by removing impediments in the way of the transfer of real estate, it is respectfully submitted to the legislature."

The section as reported was in these words: "Whenever any sale shall be made of any real estate by any executor in pursuance of any authority, power or direction contained in a will or by force thereof, and of this act, either for the payment of debts, or of legacies, or for the support of children, or for distribution of the proceeds or other purpose—*the purchaser of such estate may pay the purchase-money or consideration of such sale into the Orphans' Court* having jurisdiction of the accounts of such executor or executors, to be disposed of under the direction of such court according to the uses and trusts contained in such will, and such payment shall be deemed valid against all persons having or who may have an interest therein."

It will be observed that the object of the revisers was to protect the purchaser, who alone could put the machinery in motion. Besides, it would have been very inconvenient if not dangerous in many counties, to have in all such applications obliged the money to be paid into court—where there were neither banks nor institutions in which it could be deposited with safety, and in many cases it might not be necessary thus to lock up the fund, and the legislature therefore introduced after "executors" this clause "or with the leave of such court to such executor or executors," which gave the same protection to the purchaser as its payment into court.

By the Act of the 27th March 1865, the provisions of this section were extended to all sales of real estate of a decedent made by virtue of an order of the Orphans' Court under proceedings in partition, "and that the moneys arising from such sales shall be paid into court and distributed according to law."

The inconvenience of this enactment was soon discovered, and by the Act of the 28th April 1868 so much of the Act of 1865 "as requires the money arising from such sales to be paid into court be and the same is hereby modified, so that the court may in its discretion require such payment or may make such order as may be just in the premises."

If, therefore, the provisions of the 19th section have any operation under these two acts extending them to Orphans' Court sales under proceedings in partition, the purchaser must be the actor, which he was not in the case before us.

If, however, this construction be not adopted and it is not necessary that the purchaser should be the applicant, still these payments all made by the direct sanction of the court, and the money having reached its legal owner, and it being impossible by any retrograde movement to restore things to their pristine condition, the court will not interfere to do injustice where real justice has been done.

[Kann's Estate.]

The cases of Dyer *v.* Cornell, 4 Barr 359; Gilbert's Adm. *v.* Garber, in appellant's paper-book, and Walker *v.* De Haven, 14 Wright 101, are in point.

Decree reversed and report of auditor confirmed.