## APPEAL OF CATHARINE A. WENTZ, ET AL.

[ESTATE OF WILHELMINA E. BLADEN, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 29, 1889—Decided May 27, 1889.
[To be reported.]

1. The money derived from a sale of land in partition proceedings is never real estate, any more in law than in fact, but for a certain purpose and within a certain limit it is to be treated as real estate: that purpose is to preserve the quality of the estate so that it will vest in the persons who would have been entitled to it, had it remained unconverted, and the limit is the first transmission.

(a) The owner of land died intestate leaving a widow and children.

Adjudication.

The land was sold in partition proceedings, and one third of the proceeds charged for the protection of the widow's dower. A daughter married, gave birth to a son and died. The son died unmarried and without issue, and subsequently the son's father died, the widow of the intestate then still living. The widow afterwards died, when the dower fund was distributable.

2. In such case, the daughter's share of the proceeds vested in her as real estate when the land was sold, in possession as to part and in remainder as to the balance after the widow's life interest, and, the purpose of the rule being then accomplished, the share resumed its character as personal estate, and as such passed to her son, through him to the son's father and then to the father's personal representative.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 126 January Term 1889, Sup. Ct.; court below, No. 55 January Term 1888, O. C.

On June 7, 1888, the account of J. L. Hutchinson, administrator of Wilhelmina E. Bladen, was called for audit, when it appeared that under proceedings in partition in 1844, the real estate of Peter K. Emerick, who died in 1843, was sold in parcels, the interest of his widow being either charged upon the parcel sold or secured by the mortgage of the purchaser. On the death of the widow, December 11, 1886, the sum of $8,000, the principal set apart to secure the widow's interest, became distributable to the parties entitled thereto. The controversy in this case arose over the share of said principal to which Wilhelmina E. Bladen, a deceased daughter of Peter K. Emerick, would be entitled were she alive. This share, being the one fourth of the fund, had been paid over to J. L. Hutchinson, administrator of Wilhelmina E. Bladen, who had settled an account embracing it as of his decedent's estate, by direction, the question as to whom it was payable being reserved. The facts fully appear in the adjudication.

On July 25, 1888, the auditing judge, ASHMAN, J., filed the following adjudication:

The annexed account was filed pursuant to an order of court entered April 28, 1888, in the estate of Peter K. Emerick, deceased, from which the fund now for distribution arose. The purpose of the order was to determine the parties to whom the fund should be awarded.

Peter K. Emerick was the father of Wilhelmina E. Bladen, the decedent. He died in March, 1843, intestate, leaving a widow, Ann Emerick, and four children, Edgar, Augustus K., Catharine A. and Wilhelmina, the three last being minors. His real estate, in several parcels, was afterwards sold under proceedings in partition, and the interest of the widow, as to two of said parcels, was secured by the mortgage of the purchaser, and as to the remaining parcels was charged upon the land. The widow died December 11, 1886, and the principal of the sum set apart for her interest was thereupon divisible among the parties by law entitled. The principal, amounting to a little over $8,000, was collected by Daniel M. Bowen, Esq., who had been appointed their attorney in fact for that purpose by the surviving children of Peter K. Emerick. He paid to these children three fourths of the sum so collected, and the remaining fourth to the administrator of the estate of Wilhelmina, the deceased child. The children of Peter K. Emerick claim that the money thus paid to the administrator was real estate, and belongs to them as heirs-at-law of the said Wilhelmina.

Wilhelmina, at 17 years of age, married Washington L. Bladen, and died still in her minority, leaving surviving her husband, and one child, William E. Bladen. William, the son, died January 14, 1869, a minor, and Washington L. Bladen, the father, died August 7, 1880.

Of the children of Peter K. Emerick claiming the fund, two, Augustus K. Emerick and Catharine A. (now Wentz) survive. Edgar Emerick, another child, recently died, leaving a widow, Annie E. Emerick, who is also his sole devisee.

The argument which was submitted on behalf of the heirs is most elaborate and able, and perhaps leaves nothing unsaid, which either from principle or authority could tend to support their claim that the fund still bears the impress of the real estate from which it accrued. But it contains an admission which the auditing judge believes is self-destructive. It concedes that the proceeds of sale of these properties became cash in the hands of the distributees to whom they were paid, and that only the fund retained to secure the widow, which was indivisible, until set free by her death, was insusceptible of possession and therefore could not be distinguished from the real

estate, whose place it took. A fallacy hides somewhere in the proposition, which admits that the price of real estate sold after the owner's death, belongs to the same persons to whom the owner gave the real estate, or who took it from him by descent, but asserts that if any part of that price is withheld in order to secure the accidental interest of a life tenant, which latter may fall in, in a day or a month thereafter, such part is liable to be diverted from those persons or some of them, and to go in a totally different direction. The error is in the assumption that the cash proceeds and the secured moneys do not together constitute one fund, each part of which retains its character of real estate, or drops it at the same moment with every other part. It is not answering this, to say that the reserved fund cannot be reduced into manual possession; neither can the money represented by a promissory note which is not yet due; yet in both cases, the interest of the owner has a present value, which is as absolute and almost as ascertainable as if it were in cash, and in both cases that interest may be the subject of a valid sale.

If the auditing judge is correct here, the question is disposed of. The cash, produced by the realty sale, passed to the guardian of the decedent as real estate, but became money in his hands, on the same principle that money impressed with the character of realty is reconverted when received by a party who is sui juris, and has its absolute control, or, to put it into other words, when the fund and its use are united in the same person. This principle was established by McCune's App., 52 Pa. 450, and Kann's Est., 69 Pa. 219. It is objected that the interest of the widow is quasi real estate. But the character which for her protection the property may bear as to her, ought not to determine the character it sustains towards the heirs. The capital of her interest vested in the heirs along with the rest of the purchase money, and it vested in them as the cash did, in possession, only its enjoyment being postponed. As was said in Reish v. Commonwealth, 106 Pa. 526, " the enjoyment of real estate is not the exact equivalent of possession;" in other words, a man may be entitled to the possession of property without its present enjoyment. The share of the minor daughter so far vested in her guardian, that it could have been sold under an order of the court, and, by the same authority,

Adjudication.

the interest of the widow could have been commuted for money by the guardian, if for any reason that had been desirable. The guardian would then have received the principal of the fund which had been set apart for the widow's security. Assume that this is not so, and that the character of the interest in the hands of the widow fixed the character in which the fund went to the heirs, a conversion nevertheless was worked when the right to the fund passed by a second transmission to the child of this decedent. There must be a point at which the identity of moneys, or of securities representing moneys, which by a legal fiction are characterized as real estate, is to be deemed lost; and the cases have marked that point, at a second transmission of the fund, or the right to the fund, which is the same thing. It does not matter that the fund has not been touched by the owner, as by reason of his incapacity from non-age; the law converts it as fully as he might himself have converted it, if capable. If the cases hitherto, have treated only of a fund of actual cash, and not of securities representing cash, or of a vested right to cash payable in the future, it has been, no doubt, because it was never supposed that any distinction existed between these species of property.

These views seem to the auditing judge conclusive against the claims set up by the heirs, and are based upon authorities which were collected in Eckert's Est., 12 Phila. 93, and need not be discussed anew. But it will not be fair, nor perhaps safe, to dismiss summarily an argument so careful and ingenious as that which counsel presented at the hearing. The point of the argument was that the fund in hand was real estate up to the death of the grandchild, because neither the daughter nor the grandson had the power to transmute it, and it vested as real estate in the present claimants as heirs. It could so vest only because it had originally vested in Wilhelmina Bladen, the daughter from whom they derive title. She was the heir also to the cash proceeds, which came to her as real estate. If the guardian could use those proceeds for her benefit, and if the right to such user made them money, why could he not use for the same purpose, if necessary, the reserve fund, by selling or mortgaging her share therein, and why would not his right to do so make that interest money? Suppose that the cash proceeds had been exhausted in the support of the minor;

would the court have permitted her to starve, by prohibiting the guardian from raising money upon the mortgage which was expressly payable to the minor after the widow's death, on the ground that until she reached her majority the mortgage was real estate? Or would it assign, as another reason for its prohibition, that the heirs were interested in its continuing as real estate?

The argument of the heirs practically puts the title to the fund in abeyance for twenty-four years, by vesting it in possession only after the death of the second minor. The precise question involved was met and answered in Hay's App., 52 Pa. 449. There the title to the proceeds of sale passed as real estate to the two children, but without possession, because the father had the income for life. The children died in the lifetime of the father, and their interest was held to pass as personalty. The two cases are parallel. The principal of a fund comes as real estate to children, but the possession in enjoyment is deferred, and before the time for enjoyment is reached the children die. Yet the opinion in the case cited is, that the fund becomes personal estate while in the technical ownership of the children. The same case answers another question, which was propounded by the heirs. In the mortgage given by one of the purchasers, the mortgagor agreed after the widow's death to pay " the principal sum to the parties legally entitled to receive the same, being the heirs and legal representatives of Peter K. Emerick, deceased." The court in Hay's Appeal say : " Who are the heirs? They are those upon whom the law casts the inheritance at the death of the ancestor." The ancestor here was Peter K. Emerick, and his heir at his death was Wilhelmina Bladen. The principal of the mortgage was payable therefore to her, and at her death to her personal representatives. But it was urged, this mortgage fund must have continued to be real estate, because the guardian was not obliged to account for it, and because in McCune's Appeal and Kann's Estate, supra, he did not charge himself with such a fund. A fund is therefore either real estate or personalty, as the guardian happens to be a good or indifferent book-keeper.

The whole controversy is cleared up by the remarks of LEWIS, J., in Pennell's App., 20 Pa. 517. " If land be sold for a specific purpose the surplus proceeds shall . . . . . be

Adjudication.

considered as land, so far as to vest in the persons who would have been entitled to it had it remained unconverted." That person was Wilhelmina Bladen. "But after it has so vested in the person entitled, it is to be treated as money in his hands, and in case of his subsequent death, it goes to his personal representatives as personal estate. It cannot retain its original character forever. . . . . The distribution of the estate of a decedent among persons who never gave value for it, and who have no title to it whatever, except that which is founded upon the law and its policy, involves no principle of justice, and stands entirely uninfluenced by its dictates. The necessity of a perfect conversion at some period being apparent, and neither justice nor policy requiring that a fiction should be substituted for the fact, the proper time for it is when the money has vested in the party entitled to it, after the actual conversion." This case was cited by the heirs, apparently to show that the conversion could not take place before the widow's death, and, therefore, only those who were heirs at her death could take the fund.

Exactly what Judge LEWIS meant when he said that the time for conversion is "when the money has vested in the party entitled to it *after* the actual conversion " is not perhaps clear; but it certainly cannot help these claimants, for they rest their title on the ground that no conversion has yet taken place, and they are therefore not a "party entitled after conversion." The thing decided was clear : it was that the proceeds of sale went to the minor as realty, and in his hands became money ; and the proper time, therefore, for conversion was when the money vested in the party who was entitled before the conversion. The decision says in so many words, that a sale works an actual conversion, although the proceeds may be distributable as realty ; and that legal conversion takes place when the proceeds have vested in the heir as land.

This criterion the auditing judge has attempted to apply to this case. At the risk of a second repetition he holds that an actual, as distinguished from a legal conversion, was effected as to *all* the lands of the original decedent, when the lands were sold. This must have been so, because the legal title to the lands was taken by the purchasers subject only to a lien represented in two of the purchases by a mortgage to secure the

Adjudication.

widow. All the proceeds immediately vested in the heirs, subject to the life interest of the widow in one third. Of course that one third could not be used by the heirs until her death, but it did not cease to be money, because it had been set apart temporarily, and it was not prevented from vesting, because it could not be presently enjoyed. The auditing judge thinks that the fund should be awarded as personalty, and he so decrees.

To the adjudication of the auditing judge, Catharine A. Wentz, Annie E. Emerick and Augustus K. Emerick, excepted that the auditing judge erred, in deciding, inter alia, that the interest of the widow of Peter K. Emerick, for the purposes of transmission, was personal property, and that, while it retained the character of real estate as to the rights of the widow, it assumed the character of personal property as to the heirs.

On October 20, 1888, the court, HANNA, P. J., dismissed the exceptions and confirmed the adjudication. Thereupon the exceptants took this appeal, specifying that the court erred inter alia:

1. In assuming that after the sale in partition the interest of the minor, Wilhelmina Emerick, in remainder after the life estate of her mother in the statutory dower property, was as much personal property as the " cash proceeds," although that interest was not changed or dealt with in any way during the short lives of said Wilhelmina, who died a minor, and her child William, who also died a minor, nor converted into money until the death of the widow in December, 1886.

8. In treating the widow's statutory dower as mere personalty, or a sum of money set aside, saying of her third, " it did not cease to be money because it had been set apart temporarily, and it was not prevented from vesting, because it could not be presently enjoyed."

10. In refusing to award the money in the hands of the administrator of the estate of Wilhelmina E. Bladen, to the exceptants, who are her heirs, and the immediate heirs of her child, William E. Bladen, as well as the right heirs of Peter K. Emerick.

11. In awarding said money to Mary D. Ritchie, administratrix of the estate of Washington L. Bladen, deceased.

Opinion of the Court.

*Mr. John M. Collins* and *Mr. F. Carroll Brewster* (with them *Mr. Ernest L. Tustin*), for the appellants.

*Mr. M. Hampton Todd* (with him *Mr. James R. Booth*), for the appellee.

OPINION, MR. JUSTICE MITCHELL:

If we confined ourselves rigidly to the question raised by the actual record, this case would lie in a very small compass. The account is the account of the administrator of Wilhelmina Bladen; the money was received by him as money due to his intestate; was put in his account as money, and now must necessarily be distributed as money, and that is the end of the case.

But as the administrator filed his account in its present form, under the order of the Orphans' Court, for the very purpose of raising the real question in controversy between these parties, and it has been fully discussed here, as well as in the court below, we shall express our opinion upon that question, so as to make an end of the litigation.

One Emerick died intestate, leaving a widow and children. By proceedings in partition his real estate was sold, and part of the purchase money left charged upon the land for the widow in lieu of dower. The rest was paid to the heirs or their guardians, and is not involved in this case. Among the heirs, however, was Wilhelmina Emerick, a minor, who subsequently to the sale, married Washington L. Bladen, gave birth to one child, and died, still a minor. The child, William Emerick Bladen, died a minor, and subsequently Washington L. Bladen, the father, died, in the lifetime of the widow Emerick. On the death of the latter, the question arose whether the share of Wilhelmina in the fund set apart to her mother in lieu of dower, was real estate or personalty. Appellants, who are brother and sisters of Wilhelmina, claim it as real estate, as heirs of their nephew, William E. Bladen, and the other parties in interest claim it from the administrator, as personalty which comes to them through Washington L. Bladen, the father of William.

The claim of the appellants rests upon the contention that the sale in partition did not convert the real estate into personalty, but that the purchase money, taking its place, became realty, and must remain so until the title and the possession

should unite in a person sui juris, and thus capable of reconverting it into money; and that as both Wilhelmina and her son died during minority, and before the death of the widow, the reconversion never took place in their behalf, and the money retained its character as realty until the death of the widow, upon which the title of appellants intervened as heirs-at-law of William Bladen.

The contention is ingenious, and has been supported with great learning and earnestness, but it is not sound or tenable. The question is really no longer open, being clearly and authoritatively ruled by Hay's App., 52 Pa. 449; McCune's App., 65 Pa. 450, and Kann's Est., 69 Pa. 219. Hay's Appeal arose upon the distribution of the proceeds of the sale of real estate which had descended to a wife. Under the act of March 29, 1832, § 48, the money was paid to the husband on his giving security that it should be forthcoming at his death. The wife died, leaving children, and two of these died during the lifetime of the father. The money never was in their possession, any more than the money in the present case was in the possession of Wilhelmina Bladen. The cases are identical, except that the intervening interest that prevented present possession there, was the use by the father of the money in lieu of curtesy, and here it is the use by the mother in lieu of dower. Yet the court held that the money became personalty on the passage of the right to it to the children, and on their death it passed as personalty to the father. "On the death of Mrs. Hay," says STRONG, J., "the right to the money became vested in her three children, though the time of enjoyment was postponed until the death of their father. Two of these having died in the lifetime of their father, in their minority, and without issue, their shares descended to their father. For it descended as personalty, which it actually was. The provision in the act of assembly extended no farther than to regulate the first descent."

McCune's Appeal, and Kann's Estate, supra, are equally clear, and equally in point. The exceptionally able argument of the learned counsel for appellants, has failed to convince us, as it failed to convince the court below, that there is any difference in principle between those cases and the present. It is not necessary that we should go over the argument in detail, as that has been very satisfactorily done in the opinion

of the learned auditing judge, to which we refer for the answer to the several points made.

To that opinion I will only add that the general error of the argument is in assuming that the proceeds of the sale in partition are real estate, and require a positive act of reconversion to get them back into their character as money. It is not uncommon to say that the proceeds of real estate remain realty, etc., but the expression is not accurate. The money never is real estate, in law any more than in fact, but for certain purposes, and within certain limits, it is treated *as if* it was real estate. The purpose is to preserve the inheritable quality of the estate, so that the title may not be diverted from the previous owner, and the limit is the first devolution. The whole doctrine is the creation of equity for a specific purpose, and when that purpose is accomplished the rule ceases to operate. So far therefore from the money actually becoming real estate, and requiring a positive act of reconversion to restore it to its natural character of money, it never is real estate, and is only treated as such within a limit, which all the cases agree, is the first transmission. To quote again from Hay's Appeal, "it descended as personalty, which it actually was. The provision in the act of assembly extended no farther than to regulate the first descent, and prevent the fund from passing directly from the wife to the husband. After it had vested in the heirs" (and it is to be remembered that in that case as in this, it never did vest in possession) "it was no longer real estate for any purpose." And in the language of SHARSWOOD, J., in Foster's App., 74 Pa. 397, "conversion is altogether a doctrine of equity. It is admitted only for the accomplishment of equitable results. It may be termed an equitable fiction, and the legal maxim, In fictione juris semper subsistit æquitas, has redoubled force in application to it. It follows, of necessity, that it is limited to its end. . . . . When the purpose of conversion is attained, conversion ends."

When therefore the real estate of Peter Emerick was sold, Wilhelmina's share of the proceeds passed to her as real estate, but having vested in her, either in possession or in remainder, after her mother's life interest, the purpose of the equitable or constructive conversion was fully accomplished, and the money resumed in law its actual character as personalty, and

as such passed to her son, and through him to his father, and then to the father's personal representative.

Decree affirmed.