## McGlinn's Estate.

412

Argued April 20, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ralph B. Umsted,* in propria persona, with him *John R. Umsted,* for appellants.

*Catherine A. Donahue,* with her *James P. McCormick,* for appellees.

OPINION BY MR. JUSTICE DREW, May 15, 1939:

The court below held that certain real estate turned over as personalty to the executors of John McGlinn, Jr., by the trustees under his father's will continued its character of personalty in said executors' hands so as to be available to creditors who had not preserved their liens against John McGlinn, Jr.'s, real estate. The correctness of that ruling is the single question involved in this appeal.

In *McGlinn's Est.*, 320 Pa. 389, this court decided that under the terms of his father's will the decedent here, following a life estate in his sister, received a one-quarter share of a vested remainder in a trust fund composed of stocks, and mortgages upon Philadelphia real estate. John McGlinn, Jr., died on March 10, 1932. His sister outlived him by over two years. During the course of the sister's life estate, the trustees foreclosed certain of the mortgages and acquired the properties at sheriff sales. The present controversy centers about four of the properties so purchased.

Appellant claims that, although the properties obtained through foreclosure were held as personalty in the trust under the will of John McGlinn, Sr., upon distribution to the executors of the will of this decedent, the fiction vanished and they are for all purposes what they naturally are—real estate. Appellant's position is that the transmission to John McGlinn, Jr.'s, estate by his father's trustees was the second devolution and therefore the property was eo instanti transformed into what it was in fact.

This argument misconceives the problem here presented. This is not a question of a second devolution. As was ably pointed out by the auditing judge: "The devolution to this decedent was that of a proportional equitable interest in the trust res as a whole. This is purely a question of distribution, and, as we repeat, these particular items have been awarded to and distributed to the executors of this decedent, and they received exactly that which the trustees have to assign to them upon the award, and that was personalty."

The nature of John McGlinn, Jr.'s, interest under his father's will is clearly set forth in the opinion of the learned auditing judge: "It must be remembered that up to the time of actual distribution the legal title to every part and parcel of the trust res resides in the trustees and although everyone of said distributees had the equitable right vested within them to receive and

demand their share of the legal title at the time designated for distribution, no one of said distributees actually received the legal title to any part or parcel of the trust res until the same was assigned and transferred and conveyed to them in compliance with the awards in the adjudication upon the said trustee's account. This decedent was vested with the equitable title of an undivided one-fourth interest in the whole trust res. He had no title, equitable or legal, in any particular item of the trust res. His equitable title, we repeat, consisted of his, or his personal representatives' right to demand and receive a one-fourth distributive share at the time designated for distribution.

"When the time for distribution arrived and the trustees of the trust res filed their account, the awards were made in one-fourth proportionate shares, and the actual items which were allocated to each one-quarter share, were designated in an approved schedule of distribution, whereby the items of real estate in question, they being parcels which had been taken by the trustees in foreclosure, were amongst other items awarded to the executors of this decedent. In due course conveyances were made from the trustees to the executors of the estate of this decedent in compliance with the award. Of course the legal title to these properties never vested in the decedent, and only vested in his executors upon the conveyance to them by the trustees of the trust. It is admitted that the properties entitled in the trustees were personalty, and, in compliance with the award, the trustees conveyed them to the executors. The trustees could only convey what they had, which was personalty, and the executors received what was assigned them, which was personalty." John McGlinn, Jr.'s, remainder vested in interest from the time the trust went into effect, and the transmission by the trustees to his executors was merely a distribution of his share of what was left over after the life tenancy and

did not constitute a second devolution: see *Wentz's Appeal*, 126 Pa. 541.

Under these circumstances, the conclusion of the lower court is inescapable: "As yet there has been no devolution or transmission. The property is still in the hands of the personal representative (executors) of the decedent and is before the court for distribution. No distribution can take place, save of a balance after the satisfaction of creditors, insofar as the interests of any beneficiary under the will is concerned. As was held in the adjudication, the executors took what was distributed to them, personalty, and have accounted for it, naturally, as such. Nothing could be clearer than the order of events which brings the property in question into the executors' possession. It was personalty in the possession of their assignors, it was assigned to them as personalty, it was received by them as personalty, and it remains personalty with all the incidents thereof until it leaves their possession. We cannot comprehend how there can be any devolution of it affecting its nature or classification until it leaves the possession of the executors."

Decree affirmed, costs to be paid by appellant.