[Filed October 26, 1886.]

## J. H. BURKHART *v.* ESTELLE M. HOWARD ET AL.

BOND FOR DEED—VENDOR AND VENDEE.—It seems that the effect of a bond for a deed is to transfer the equitable title in the property to the vendee, and that the vendor holds the legal title merely as security for the sum named therein.

SAME—MORTGAGE.—Where the obligor in such a bond, conditioned to convey on the payment of the vendee's note for the purchase price, afterwards mortgages the land to a third person, such mortgage transfers to the mortgagee the security held by the former to the extent of the mortgage.

SAME—ASSIGNEE AFTER MATURITY—NOTICE.—In such case, the asssignee, after maturity, of the vendee's note for the purchase price of the property, would have no greater right than his assignor ; and this, notwithstanding the mortgage was not recorded till after the assignment of the note.

LINN COUNTY.     Plaintiff appeals.     Modified.

*Charles E. Wolverton* and *O. H. Irvine*, for Appellant.

The effect of a title bond is to transfer to the obligee the equitable title to the land, while the obligor reserves the legal title as security for the purchase price. It is in the nature of a mortgage. (Adams Eq., 135*, 139*; *Shaw* v. *Chambers*, 48 Mich. 355; *Peters* v. *Beverley*, 19 Peters, 533; *Williams* v. *N. J. Southern R. R. Co.*, 29 N. J. Eq. 320; *Champion et al.* v. *Brown and Brown*, 6 John Ch. 398; *Moore* v. *Burrows*, 34 Barb. 173; *Hansborough* v. *Peck*, 5 Wal. 506; 1st Jones Mortgages, Sec. 225; *Wing* v. *McDowell*, Walk. Ch. [Mich.] 175; *Church* v. *Smith*, 39 Wis. 492; *Salmon* v. *Hoffman*, 2 Cal. 139; *Clark* v. *Hall*, 7 Paige, 382; *Smith* v. *Robinson*, 13 Ark. 533; *Merritt* v. *Judd*, 14 Cal. 60; *Sparks* v. *Hess*, 15 Cal. 186.) And the assignment of a note for the purchase price carries with it the lien. (*Stevens* v. *Chadwick*, 10 Kan. 413; *Church* v. *Smith*, 39 Wis. 496, *supra*; *Blair & Co.* v. *Morse et al.*, 8 Iowa, 143, 147; *Morse and Carl* v. *Anders*, 14 Ark. 628, *supra*; *Grigsby* v. *Hair*, 25 Ala. 327; *Wells* v. *Morrow*, 38 Ala. 125; *Graham* v. *McCampbell*, Meigs [Tenn.] 52. The equities arising from the transfer of an overdue note to the parties, and in favor of third parties, cannot be considered. (*Murray* v. *Lylburn*, 2 John Ch. 442; *Bloomer* v. *Henderson*, 8 Mich. 402; *De Witt* v. *Van Sycle*, 29 N. J. Eq. 209, 212; *Putnam* v. *Clark*, 29 N. J. Eq. 412; *Starr* v. *Haskins et al.*, 26 N. J. Eq. 415; Story on Bills, Sec. 428; *Wright & Co.* v. *Lery*, 12 Cal. 257; *Woodruff* v. *Depue & Morris*, 14 N. J. Eq. 168.)

*L. Flinn* and *George E. Chamberlain*, for Respondents.

The doctrine that a vendor of land has a lien thereon for the unpaid purchase price, either before or after conveyance absolute, does not obtain in this state. (*Kelly* v. *Ruble*, 11 Or. 92, and cases cited.) If it be held that the doctrine does prevail, yet the right is personal and not assignable. (*Brush et al.* v. *Kinsley et al.*, 14 Ohio, 21; *Jackman* v. *Hallock*, 1

Id. 320; *Green* v. *Demoss*, 10 Humph. 371; *Dixon* v. *Dixon*, 1 Md. Ch. Dec. 220; 2 Story's Eq. Jur., Sec. 1227; *Halleck* v. *Smith*, 3 Barb. 272; *Gilman* v. *Brown*, 1 Mason, 218; *White* v. *Williams*, 1 Paige, 506; *Welborn* v. *Williams*, 9 Ga. 89; *Baum* v. *Grigsby*, 21 Cal. 177; *Williams* v. *Young*, Id. 228; 3 Pomeroy Eq. Jur., Sec. 1254, and cases cited; 1 White and Tudor Ld. Cases in Eq. 492.)

Thomas Monteith, by his mortgage to D. B. Monteith, is estopped to assert his lien against the lots in question. (Bigelow, Estoppel, 253.) And his assignee, after maturity of the note, can have no more extended right than the assignor. (*Jack* v. *Davis*, 29 Ga. 219; *Smith* v. *Rogers*, 14 Ind. 224; *Wilson* v. *Bowden*, 26 Ark. 151; *Bush* v. *Lathrop*, 22 N. Y. 535; *Shotwell* v. *Webb*, 23 Miss. 375.)

THAYER, J.—The record herein shows that the appellant, as administrator of the estate of Philip Baltimore, deceased, commenced a suit in the Circuit Court for Linn County, to foreclose a certain bond for a deed. He alleged in his complaint, after alleging the decease of said Baltimore and of his appointment as administrator of the estate of the deceased, that on the 19th day of September, 1877, said Estelle M. Howard executed to Thomas Monteith her promissory note for five hundred dollars, with ten per cent. interest per annum from date, payable as follows: The interest on or before one year from the date thereof, one hundred dollars of the principal, and all the interest due on or before eighteen months from the date thereof, and a like payment of one hundred of the principal, together with all interest due, to be made on or before the expiration of each six months thereafter, until the whole sum of five hundred dollars and interest was paid; that at the same time the said Monteith executed to the said Estelle M. Howard a bond with a penalty of one thousand dollars, conditioned that it should be void if said Monteith executed to her a deed to lots 5 and 6 in block No. 90, in the city of Albany, in Linn County, Oregon, on or before the 1st day of January, 1884, provided she should on or before that date pay to him the amount

of the said note and interest; that by mutual mistake between said parties the premises to be conveyed were incorrectly described in the bond; that they should have been described therein as lots 5 and 6 in block No. 90 in the Southern Addition to the city of Albany, in Linn County, Oregon. That the said Estelle M. Howard went into immediate possession of said lots, and ever since had been, and then was, in the actual and notorious possession of them; that on the 5th day of February, 1884, the said Thomas Monteith, for value, duly assigned and transferred said promissory note to appellant, who became the legal owner and holder thereof; that said Estelle M. Howard had paid fifty dollars thereon, and the interest to September 19, 1878, and no more; that the amount thereof, with the interest thereon at 10 per cent. per annum from said last date, was due and owing from said Estelle M. Howard to appellant; that on February, 1884, said Thomas Monteith duly assigned all his property, both real and personal, including the said lots, to respondent R. S. Strahan, for the benefit of his creditors, but that said Strahan received the assignment with notice of the possession and rights of said Estelle M. Howard; that said assignee and said Thomas Monteith were ready and willing to make, execute and deliver to the said Estelle M. Howard a good and sufficient deed to the premises, but that she would not accept it, and refused to pay the note; that the other respondents claimed some interest in the premises; but that it was subsequent and subject to the interest of the said Estelle M. Howard. The complaint concluded with a prayer for a decree against said Estelle M. Howard for five hundred dollars and interest; for a re-formation of the bond in reference to the description of the lots; for a sale of them, and the primary application of the proceeds to the payment of said debt and interest.

It further appears from said record that all the respondents except said Estelle M. Howard filed a demurrer to the complaint, which having been overruled, two of them, said Strahan and D. B. Monteith, filed separate answers. The former denied that he was ready or willing, or would at all, make, ex-

ecute or deliver to the said Estelle M. Howard a good or sufficient deed to the lots, or that he took or received the assignment from said Thomas Monteith subject to any lien or rights of appellant in or to the lots ; alleged that the assignment was made on or about the last day of February, 1884 ; that said Thomas Monteith, long before he executed the bond, owed one Hannon the sum of four thousand dollars, with accruing interest from December, 1876, and still owed it to Hannon ; that it had been reduced to a judgment, and presented for payment as a claim against the estate of said Thomas Monteith, and that more than six months had elapsed since the presentment, and no objections had been made to it; and claimed that thereby his interest as assignee in the premises was prior to any interest of the appellant therein.

D. B. Monteith, in his answer, denied that his interest or claim in the premises was subsequent or subject to that of the appellant or of the said Estelle M. Howard, or that it was acquired with any knowledge or notice of any interest of the appellant, except that he had knowledge of the giving of the bond set forth in the complaint; and that Estelle M. Howard refused to pay said note or any part thereof, except thirty dollars.     And he further alleged in his answer, that before the assignment of the note by Thomas Monteith to the appellant, he executed with the said Thomas Monteith, as surety only, for the sole use and benefit of said Thomas Monteith, four certain promissory notes ; one of them January 1st, 1883, for $5,000, with interest at ten per cent. from date, payable one day after date; two of them October 1st, 1882, for $6,000 each, with interest at the same rate, and payable one day after date; and the other on the same day for $5,000, bearing the same rate of interest, and payable at the same time ; that to secure him against payment of said notes, the said Thomas Monteith and wife, on the 2d day of February, 1884, before the assignment of the note to appellant, executed under their hands and seals a mortgage on certain premises therein described, which included said lots ; that said mortgage was duly acknowledged so as to entitle it to record, and the same was,

on the 11th of February, 1884, duly recorded in the office of the clerk of the said County of Linn ; that the conditions in said mortgage having been broken, he, said D. B. Monteith, commenced a suit in said circuit court against said Thomas Monteith to foreclose it; that he obtained a decree at the October term, 1884, of said circuit court, foreclosing said mortgage, and directing the sale of the mortgaged premises, including the lots in question, to satisfy the sum of $19,002.20, and interest thereon, the amount adjudged to be due the said defendant from the said Thomas Monteith, besides costs, which decree remained in full force.

The case was heard upon these pleadings, and the court decreed a dismissal of the complaint, which is the decree appealed from.

The appellant's counsel contends that the effect of the bond executed by Thomas Monteith to Estelle M. Howard transferred the title in equity to the lots from the former to the latter ; that he held the legal title merely as a security for the payment of the note ; and that when he transferred the note to the appellant, it entitled the latter to the benefit of the security ; that the transaction between said Monteith and Estelle M. Howard was, in effect, a mortgage in favor of the former upon the premises in question, to secure the purchase money, and that when the note was transferred, it was as effectual to transfer the security as the assignment of a note secured by a mortgage would be to transfer the mortgage. It occurred to me upon the hearing that said counsel's position was entirely correct in principle, and I am still of that opinion ; but conceding this to be true, what security had Thomas Monteith, growing out of the transaction, to transfer, when he assigned the note to the appellant? He had at the time executed the mortgage to said D. B. Monteith for about $19,000, which covered the premises in question. That mortgage certainly extended to the security he held against the lots, and, it seems to me, put it out of his power to enforce it to the extent claimed herein. He could not, on said 5th day of February, 1884, at the time he assigned the note to appellant, have gone into a

court of equity and charged Estelle M. Howard personally; could not have claimed a decree against her for the debt, for he had put it out of his power to comply with the conditions of his bond. He was not in a condition to execute to her a good and sufficient deed to the lots, and could not equitably require her to pay the debt. Again, he could not resort to the security, as he had pledged that to D. B. Monteith; except in subordination to the rights of D. B. Monteith, under the mortgage he had executed to him. And if Thomas Monteith were not in a situation to foreclose the security arising under the bond and note, as mentioned above, how can the appellant claim to be invested with the right? The note assigned to him was past due when he received it, and of course he must have taken it subject to all the equities existing against it. He could not claim any greater right in the premises than his assignor had, and the latter could not certainly have cut out the mortgage he had executed. If Thomas Monteith had, prior to the assignment of the note to the appellant, conveyed away the lots in question by deed of conveyance to an innocent purchaser, no one would contend that he could have them appropriated to the payment of the note, or enforce its payment in equity. And had he attempted to enforce its payment at law, a court of equity would have restrained him under such circumstances. And it appears to me that he occupied no more favorable position in having placed a $19,000 mortgage upon the lots, than if he had sold them outright. He could not have made a deed to them that would have been worth a cent, and upon no principle of equity could he have compelled Estelle M. Howard to pay for them, unless he were in a condition to fulfil the obligation which his bond to her imposed upon him. Unless, therefore, the appellant has acquired a superior right to that of Thomas Monteith, he has no standing in a court of equity, and I fail to perceive how he can have secured any greater right than the former had to enforce the payment of the note as a personal claim. If the note had been transferred to him for value before its maturity, and the record did not disclose any conveyance of or incumbrance upon the lots at

the time, he might have occupied a more favorable position than he does now ; but receiving a dishonored note under such circumstances would not, as I can see, afford a party any advantage as against the maker that the payee did not enjoy. In that particular he would stand in the latter's shoes.

I have not considered the effect of the debt to Hannon, and its reduction to a judgment, as important, for it does not appear when the judgment was obtained ; nor the assignment to Strahan for the benefit of creditors, as that was made after the assignment of the note to appellant ; yet I am not prepared to say that they were not circumstances that would interfere with the appellant's right to the relief claimed, though they might not affect his right to subject the lots to the payment of the note. I think, beyond question, that the appellant took the note and the rights incident thereto subject to the mortgage to said D. B. Montcith. The mortgage, it is true, was not then recorded ; was not recorded until the 11th day of February, 1881, nine days after it was executed, and six days after the assignment of the note ; but the note being past due at the time it was signed, was a sufficient circumstance to put the appellant upon inquiry when he took it. I think, therefore, beyond question, that the appellant's right under the assignment was subordinate to that of D. B. Monteith under his said mortgage, though the mortgage was not recorded until after the assignment was made. But I cannot see any reason why the right under the assignment should not take precedence to that made to Strahan for the benefit of his creditors. It had then vested in the appellant, and it was not in the power of Thomas Monteith to divest himself of it. If Hannon's judgment had been docketed at the time, it would have been a lien upon the lots, and would have vested in him the right to have had them applied, subject to the rights of Estelle M. Howard, to the payment of it ; but that fact does not appear.

Nor has there been any neglect shown upon the part of appellant forfeiting his right. There was no record notice of it, nor could there have been. It was not of such character that it could have been recorded, and the recording act does not

extend to such transactions. (*Fash* v. *Ravesies*, 32 Ala. 451.) This may be of no practical benefit to the appellant, as the D. B. Monteith mortgage may effectually extinguish it, but it was a lien upon the lots, and entitled the appellants to a decree enforcing it as against them, subject to the lien of the said mortgage. The appellant was entitled to a decree of that character, but not to any personal decree, as against the said Estelle M. Howard. Such decree should be entered herein, and the decree appealed from be modified in accordance with this opinion.

LORD, C. J., concurs in the result.

STRAHAN, J., did not sit in this case.