IN THE MATTER OF THE ESTATE OF JAMES B. STRANG, Deceased, WARD B. STRANG, Executor, AND OTHERS, Appellants, v. FANNIE HALL AND OTHERS, Appellees.

**Appeal:** PARTIES: MINORS. Where minor legatees were duly served with notice in a proceeding to construe a will and were represented in the district court by a guardian *ad litem,* a general guardian thereafter appointed and authorized to prosecute an appeal was a proper party to the appeal, and notice served upon him gave the appellate court jurisdiction of the minors.

**Notice of appeal:** SERVICE UPON INSANE PERSON: DISCREPANCY IN NAME. Where notice of appeal properly named an insane person confined in a hospital, a discrepancy in the name given as returned by the Superintendent of the Hospital in his acceptance of service, is held insufficient to deprive the appellate court of jurisdiction, there being no showing that the person named in the return was not the same as the one to whom the notice was addressed.

**Trusts:** LAND CONTRACTS: CONSIDERATION. Where a testator contracted to convey to his children certain described lands at an agreed price and put them in possession on consideration that they pay taxes and interest, and it was provided that in the settlement of his estate the land to the agreed value should be treated as advancements and if greater in value than their share under his will they to pay the excess to his estate, the testator held the title in trust for the benefit of the children, whether the contracts be held agreements of sale or to devise; and they are supported by sufficient considerations.

**Estates of decedents:** CONVEYANCE OF REAL ESTATE: CONVERSION INTO PERSONALTY. Where a testator held in trust lands which he had contracted to convey or devise to certain heirs as their interest in his estate, but charged with payment by them to his estate of the value thereof in excess of a stipulated sum, the excess so paid was converted thereby into personalty and

passed to other heirs under the will, as such, unburdened by charges imposed by the will on testator's remaining real estate.

*Appeal from Johnson District Court.*— HON. O. A. BAY-INGTON, Judge.

MONDAY, MARCH 12, 1906.

REHEARING DENIED, THURSDAY, SEPTEMBER 27, 1906.

ACTION brought for the construction of certain provisions in the last will and testament of James B. Strang, deceased. From the decree rendered by the district court, the plaintiffs appeal.— *Reversed.*

*John J. Ney,* and *Wm. Glenn,* for appellants.

*Milton Remley,* for appellees.

WEAVER, J.— The testator died in the year 1903. Prior to December 10, 1904, there had been born to him nine children, and being possessed of considerable property, mostly real estate, he undertook to make provision in reference thereto for the benefit of his family. As one step in that direction he entered into a written contract with his daughter Julia Swafford in the following terms, to wit:

This agreement made and entered into this 10th day of December, 1894, by and between James B. Strang, party of the first part and L. G. Swafford and Julia Swafford, parties of the second part witnesseth: That said first party, being the father of Julia Swafford, has given to the said second parties the possession of the following described real estate, to wit: The west one-half of the southwest quarter of section 19, and the west one-half of the northwest one-quarter of section 30, township 81, north range 7, west of the 5th P. M., and it is agreed that the estimated price of the said land is $6,400.00, and the said second parties shall pay the taxes on the said lands and shall also pay as long as the said first party or his wife, Julia Strang, shall

live, six per cent. interest on the said sum of $6,400.00, such payment to be made annually on the 1st day of March of each year, and it is further agreed that upon the death of the said first party and his wife, Julia Swafford, shall be charged in the settlement of the estate with the sum of $6,400.00, and if the share under the will, which is of even date herewith, shall not amount to $6,400.00, then the said second parties shall pay the difference to the executors of the said estate, and such difference shall be a charge upon the land until the same is paid.  It is further agreed that if the said second parties shall fail for six months after the same becomes due, to pay the taxes, or shall fail to pay the said interest to the said first party, or in case of his death to the wife of said first party, then the said first party or in case of his death, his said wife may declare this contract forfeited and null and void, and in that case the said second parties shall have no interest in said real estate under and by virtue of this contract.  It is understood, however, that in the settlement of the estate of said party, other lands which the said first party now owns shall be estimated at the amount stated in the said will any increase in the value of such other lands shall not inure to the benefit of the said Julia Swafford such valuation being named in the will referred to.  In witness whereof, the said parties have hereunto set their hands.  James B. Strang, L. G. Swafford, Julia Swafford.

Another contract identical in terms as to another tract of land was on the same day made by him, with his daughter Nellie Dean and her husband.  On the same datte, also, he made and executed a will recognizing and affirming said contracts and providing a plan for finally equalizing the distribution of his estate between his nine children.  At some time thereafter, and before the execution of the will now in question, the testator entered into other similar contracts as to other lands with his daughter Ella Potter and her husband and his son Ward B. Strang.  On October 31, 1903, the testator revoked the will made in 1894, and executed the will now in controversy.  It should also be noted that between the dates of the two wills mentioned the daughter

Nellie Dean had died, survived by her husband and several children. The later instrument consists of nine items, or paragraphs, as follows: Item 1 is a general direction for the payment of all debts and funeral expenses. Item 2 bequeaths all of the testator's personal property to the children of Ward B. Strang living. at the time of the testator's death. Item 3 provides for the establishment of a principal fund of $500, the income from which is to be used in maintaining a lot or burial place in the cemetery. This fund, it is provided, shall be paid " out of the real estate of which I may die seized other than the property in Cedar Rapids which I will devise in a later paragraph of this will and the property to which I have given contracts to my children and their spouses as hereinafter referred to and I make this bequest a lien on such other property." Item 4 bequeaths to Belle Stewart the sum of $500 to be paid " out of my real estate of which I may die seized other than the Cedar Rapids property or the property under contract to my children as referred to in item 3." Item 5 devises certain described property in Cedar Rapids in equal shares to Fannie Hall, Dora E. Salisbury, Belle Stewart, Ward B. Strang, and Estelle Funk. The remainder of said will is in the following words:

Item 6. Whereas, I have heretobefore made certain contracts in reference to lands in said contracts described, with my daughter Julia Swafford, with my daughter, Nellie Dean, and her husband, Stephen Dean, with my daughter, Ella Potter, and her husband, Robert Potter, and with my son, Ward B. Strang. And whereas, said contracts provide that in the settlement of my estate the said lands so described, shall be valued at the prices in said contracts named and the amount thereof in the settlement of my estate shall be deducted from the shares of each of my said children, provided, however, that my said children comply on their part with the provisions of said contract. And whereas the interests of the children aforesaid under my will of date December 10th, A. D. 1894, have been changed by codicils in some respects and I am desirous of making the

further changes shown by this will and yet do not wish nor intend to avoid any of the obligations assumed under my contracts aforesaid. Therefore it is my wish and my will, that my contracts aforesaid be carried out according to the provisions thereof. That the foregoing items, 1, 2, 3, 4, and 5 be fully carried out; that on my death my executors have my estate appraised; that in such appraisement the west half of the southeast quarter of section 19, and the west half of the northwest quarter of section 30, and the land in the southeast quarter of section 30, north and west of the river, shall be estimated at twenty dollars ($20) an acre, and the east half of the southeast quarter of section 19, and part of the northeast quarter of the northeast quarter of section 30, and the southwest quarter of the northwest quarter of section 20, and the west half of the southwest quarter of section 20, and the west half of the northwest quarter, twenty-nine, shall be estimated at forty dollars ($40) an acre, and the east half of the southwest quarter of section 20, and the east half of the northwest quarter of section 20, all in said township 81 north, range 7, west of the fifth P. M., shall be estimated at twenty-four dollars ($24) per acre, but all other lands or property shall be estimated at the actual market value thereof at the time of settlement, and if in said settlement with Julia Swafford and her husband, L. G. Swafford, with the heirs of Nellie Dean and Stephen Dean her surviving husband, with Ella Potter and Robert Potter and with Ward B. Strang, it appears that the land described in any one of said contracts at the valuation placed thereon in said contract, and in this will amounts to more than one-ninth part of the aggregate value of the property of my personal and real estate, including the property in said several contracts described, then the said child shall pay to my executors a sum in cash equal to such excess and shall have no further interest in my estate unless a further interest is given such child by the subsequent provisions of this will.

Item 7. (1) It is my will that my executor, Ward B. Strang, convey to my daughter, Julia Swafford, in lieu of the land described in the original contract to her and her husband, L. G. Swafford, which was at their request conveyed by me to a purchaser and the proceeds at their request invested in land to be held by me in lieu thereof in

Madison county, Iowa, which latter land was disposed of and invested in the land hereinafter described in said original contract to wit: Lot nine (9) in the east half of the northeast fractional quarter and the west half of the northeast fractional quarter and the west half of the southeast quarter and the east half of the southwest quarter (except lots 2 and 13 the south side thereof). And lot 14 of the west half of the southwest quarter and the east half of the northwest fractional quarter, all in section 4, township 83, range 81, west of the fifth P. M., in Green county, Iowa, upon the said Julia Swafford paying in money to my said executor the excess referred to in item 6 of this will, in the event that there is an excess in the value of the land contracted to said Swaffords as in said item provided.' And' upon said condition and on condition that the provisions of the contract are fully complied with in my lifetime, I will and devise said land to Julia Swafford. (2) It is my will that my executors shall convey to the children of my deceased daughter, Nellie Dean, surviving her, the land described in the contract to Nellie Dean and her husband, upon the payment by them of the excess, in the event that said land exceeds in value, under the appraisement provided for, the share of said Nellie Dean in my estate as stated in item 6 of this my will, and provided further that the provisions of the contract are fully complied with in my lifetime and upon such condition I devise said land to the surviving children of my said daughter, Nellie Dean. (3) It is further my will that my executors convey to my daughter, Ella Potter, the land described in her contract made by me to her and Robert Potter, upon the payment by her of the excess in the event that the said land exceeds the share of Ella Potter in my estate as it will be determined under the provisions of item 6 of this, my will, provided further that the provisions of said contract are fully performed and complied with in my lifetime. And upon such conditions I devise said land to my daughter, Ella Potter. (4) It is further my will that my executor, L. G. Swafford, convey to Ward B. Strang, the land described in my contract to him upon the payment of the excess, if any, of said land over his share of my estate as determined under the provisions of item 5 hereof and provided that he fully complies with the provisions of said contract in my life-

time, and upon said conditions I devise said land to him.

Item 8.   (1.) I will devise and bequeath to my daughters, Dora E. Salisbury, Mary Frances Hall, and Belle Stewart each, an undivided one-fifth of my real estate remaining after the payment of the bequests provided for in items 3 and 4, and after the conveyances to be made by my executors as provided in item 7 of this, my will, in fulfillment of the contracts therein referred to, and after the devise in item 5.   (2) I further will and devise an undivided one-fifth of my real estate so remaining after the payment of the said bequests provided for in items 3 and 4, and after the conveyances to be made by my executor as provided in item 7 and after the devise in item 5 hereof, to my son, Ward B. Strang, in trust for the surviving children of Laura Funk or their heirs, the said Ward B. Strang, to invest the same at the best rate of interest possible, consistent with good security, until the death of Laura Funk, and then distribute the same to beneficiaries, and out of such interest derived from such investment, said Ward B. Strang, trustee, may in his discretion, during the lifetime of my said daughter, Laura Funk, let her have such wearing apparel or other necessaries or comforts as he may see fit to provide and purchase for her, I reposing full confidence in my said son, Ward B. Strang, leave such purchases entirely to his discretion.   Said Ward B. Strang shall keep the said one-fifth of my real estate invested and add thereto the unexpended interest, if any, that accumulates and shall loan said money out on good security and retain such principal and interest in his hands until the death of my daughter, Laura Funk, unless he finds that it would be advantageous to her children to distribute to them or some of them a portion of the principal or interest prior to the death of the said Laura Funk.   And it is my intention that he shall exercise his discretion and judgment in this respect and if it will be of great advantage to such children of the said Laura Funk, to give them a portion of their interest from the share so set aside for their benefit in the lifetime of my daughter, Laura Funk, he may do so.   (3) I will and devise to my son, Ward B. Strang, an undivided one-fifth of my real estate remaining after the charge in items 3 and 4, and the devise in items 5 and 7, in trust for the children of Laura Funk, who survive her, the surviving children of

my daughter, Nellie Dean, and my own children now living, other than Clarence Strang and Laura Funk. My said 'grandchildren, the surviving children of Laura Funk to receive one-eighth of such beneficial interest, to be divided between them and the surviving children of my daughter, Nellie Dean, to receive one-eighth of such beneficial interest to be divided between them. And my own children, except the said Clarence Strang and Laura Funk and Nellie Dean, deceased, each to receive one-sixth. The interest of such beneficiaries being subject to the following contingency and conditions, to wit: Said Ward B. Strang shall keep the principal and unused income therefrom in safe interest bearing securities, until the death of Clarence Strang, and then distribute same to beneficiaries, he may in his discretion use whatever in his judgment he deems advisable, for the comfort and support of the said Clarence Strang, who is insane, and if the said Clarence Strang should recover his reason, then in that event he shall be the sole beneficiary of such trust, and my other children and the grandchildren shall have no interest therein except as provided therein. If the said Clarence Strang permanently recovers his mind and marries and has heirs, then in that event said trustee is authorized to transfer a legal title of the said one-fifth involved in his trust to the said Clarence Strang, but if the said Clarence Strang recovers his reason and does not marry, then the income from said trust fund shall be paid to him as long as he lives, and upon his death the same shall be divided among my children and grandchildren as above provided.

Item 9.   I believe that I have disposed of all property real and personal, of which I may die the owner, but in order to meet any contingency that may arise, I will, devise and bequeath to my son, Ward B. Strang, any property owned by me at my death not herein otherwise disposed of.

In their petition for the construction of this will the executors, after stating its terms, set forth matters upon which doubts have arisen as follows:

Among other property that will come into the hands of these executors and which is now nearly ready to be paid to them is the excess that the land received, under contract

and the terms of this will by Julia Swafford, the heirs of Nellie Dean, Ella Potter, and her husband and Ward B. Strang, is over the share of said several heirs in the estate if they were to receive an equal share in said estate, and doubts have arisen whether this excess, amounting to about $1,500 under the terms of the will, is personal or real property. Doubts have arisen also as to whether, by the terms of the will, the $500 set apart for the cemetery .fund and the $500 set apart for Belle Stewart should be taken out of the excess paid in or to be paid in by the said parties, or whether the same should be taken out of the real estate other than the houses and.lot in Cedar Rapids or the property under contract to the children of deceased, to wit, the said Julia Swafford *et al.* Another doubt has arisen as to who shall receive the said excess if it is not absorbed in the payment of the legacies of $500 herein referred to. These executors ask the court,.therefore, to construe said will and direct them how to apply and pay said money when received, and to construe said will in all matters pertinent to the administration of this estate.

From this statement we understand that upon ascertaining the full value of the testator's estate, and taking into consideration the lands included in the contracts held by four of his children as aforesaid, it was found that these lands so received by said children, when taken at the agreed valuation, exceeded their shares under the will :by the sum of $1,500, and it is the disposition or application of this sum paid or to be paid into the hand of the executors concerning which instruction is asked. The district court found and held that upon a proper construction of the will the excess above referred to is to be considered and treated by the executors as real estate, and shall be disposed of in the manner provided by the will in respect to the real estate left by the testator other than the property in Cedar Rapids and the lands included in the contracts held by the four children aforesaid. It is from this finding that the appeal is taken.

I. Among the appellants appearing in this court is D. L. Boyd, guardian of the minor children of Ward B. Strang,

who are legatees under the will. It is objected by the appel-
lees that this guardian was not a party to the
1. APPEAL: par-   case in the trial court, and therefore cannot
ties: minors.
be permitted to appear in this court.   As
nearly as we can determine from the record, these infants
were duly served with notice of the proceeding to construe
the will, and were represented by W. J. Huff, Esq., who
was appointed guardian *ad litem* by the court for that pur-
pose.   Shortly after the trial in the district court the said
D. L. Boyd was appointed general guardian of said children
and was authorized by the court to prosecute an appeal from
the finding and judgment herein.   It is the contention of
the appellees that this fact gives said guardian no standing
in this court, and that the notices of appeal served by him
are nullities and have no effect to give this court jurisdic-
tion to hear the case upon its merits.   In our judgment
that proposition is unsound.   The appeal, while in form
the appeal of the guardian, is in substance the appeal of
the infants, who by reason of their infancy must appear and
prosecute their case by a duly appointed representative.   The
fact that a guardian *ad litem* appeared for them in a trial
court does not render it imperative that they must be rep-
resented by him on appeal in this court, and, if the court
below sees fit after judgment is entered to appoint a gen-
eral guardian and authorize him to prosecute the appeal,
it is acting within its jurisdiction, and we are bound to
recognize the validity and propriety of the order.   If a
guardian appearing at the trial should resign before appeal
is taken, no one would contend that his successor in the trust
is without authority to act in the premises any more than
the administrator of a party who dies after entry of judg-
ment is without authority to prosecute appeal on behalf of
his intestate.

It is next urged that no notice of appeal was served
on a son of the testator mentioned in the will, by the name
of Clarence Strang.   If we correctly apprehend the situation,

this objection is based upon an apparent lapse in the record

**2. NOTICE OF APPEAL: service upon insane person: discrepancy in name.** rather than from any omission in fact to serve the proper notice. It appears from the will itself, and from various statements and admissions cropping out in the numerous abstracts, amendments, and counter amendments with which this court has been showered, that Clarence Strang is and for some years has been insane and under treatment and restraint at the state hospital at Independence, Iowa.   The notice of appeal was directed to Clarence Strang and sent to the hospital for service upon him, and the superintendent of that institution, acting under the statute which permits him so to do, accepted service in behalf of the patient, naming him as " James C. Strang." This discrepancy was evidently unnoticed by either party until after the appellants' abstract had been filed in this court. It was then made a ground of a motion by appellee to dismiss the appeal. There is not the slightest pretense in abstract or in argument that Clarence Strang and James C. Strang are not one and the same person. The notice was directed to him by the name of " Clarence," and it was for him the superintendent accepted the service, and, if in so doing he described or named him as " James C.," we think the service was not thereby vitiated. The paper is not supposed to go into the patient's hands. The law substitutes for him for the purposes of the notice the superintendent in whose custody he is, and it is made clearly to appear in the present instance that the notice did reach the hands of the proper person. The acknowledgment of the service, when read, as it should be, in connection with the notice itself, indicates with sufficient clearness that the name of " James C. Strang " is but an immaterial variation of the name of " Clarence Strang," and refer to one and the same person.

It is further to be said that the original notice by which Clarence Strang was brought or attempted to be brought into this action in the court below was served in precisely the

same manner as the notice of appeal was served upon the same person; the service being in each case accepted by the superintendent of the hospital for and in the name of " James C. Strang." If the first service was sufficient to give the trial court jurisdiction over Clarence, why is not the same kind of service sufficient to bring the same person into this court? If it was not sufficient, then Clarence Strang was not made a party in the district court, and service of the notice of appeal upon him is not necessary to the jurisdiction of this court.

II. Coming now to the merits of the appeal, it will be observed that by treating the so-called excess money in the hands of the executors as real estate it is made subject to
3. TRUSTS: land contracts: consideration.
item 3 of the will establishing a cemetery fund of $500, and item 4 providing a legacy of $500 to Belle Stewart, and item 8 providing for a division of testator's remaining real estate between the heirs generally; while, if we are to treat said excess fund as personalty, it must go direct to the children of Ward B. Strang under the terms of item 2 of the will, which makes said children the sole beneficiaries of his personal property undiminished by any of the charges created by subsequent items or provisions. In considering this question, much attention has been given by counsel to the discussion of the doctrine of equitable conversion, but we think it unnecessary to go into a review of the authorities cited. Had the testator in his lifetime entered into contracts for the sale of these tracts of land to persons outside of his family, no one, we think, would contend that his claim to recover any unpaid portion of the sale price was not a chose in action or that upon his death it was not to be inventoried and treated as personal property.

Appreciating the point here suggested, the appellee argues with much force that the contracts between the testator and the four children named are not to be treated as contracts of purchase, and that each of said children takes

his or her land, not as vendee under the written agreement, but as a devisee under the will.  But is this true?  And, if true, is it conclusive of the correctness of the decree appealed from?  It appears to us that the contract must be treated as a contract of sale, or at least as a contract to devise the lands therein described, and that upon either theory the holding of the trial court cannot be upheld.  The contract in each case invests the second party with the possession of specifically described lands and places thereon an agreed price or value.  On this value the second party undertakes to pay interest to the first party for life, and to discharge the taxes as they accrue.  It is next agreed, in effect, that upon the death of the first party and the settlement of his estate the agreed contract value of the land shall be treated as in the nature of an advancement to the second party, and, if such advancement or agreed value proves to be greater than the proper share of the latter under the will to which reference is expressly made, then the latter will pay or return to the estate the amount of such excess.  No objection is raised in the record that the holders of these contracts or either of them failed to perform the conditions thereof on their part, and we must take it for granted that they paid the taxes and interest as agreed upon to the date of the testator's death.  In other words, they have performed or paid in full the agreed consideration.  Here, certainly, are all the essential elements of an enforceable contract, whether it be called a contract of sale or an agreement to devise.  Suppose that during the life of the testator, while the holders of the contracts were in possession of the lands, and without any default on their part, he had conveyed the lands without their consent to some third person.  It would seem too clear for any manner of doubt that such conveyance would be of no force or effect against these children.  Had the testator, after making these contracts and putting the children in possession of the lands, revoked his will and died intestate, or if by a codicil

or by another will he had devised the lands to other persons, it is equally clear that the rights of the holders of the contracts would be in no manner affected. It is, of course, too well understood for argument that contracts of sale may be specifically enforced against the vendor, his heirs and devisees. It is also well established that agreements to devise, when founded upon a consideration, will likewise be enforced. In such case the heir to whom the legal title has descended, or the devisee to whom the land has been devised in violation of the agreement, is deemed to hold such title in trust for him to whom it should have been devised. *Whiton v. Whiton,* 179 Ill. 32 (53 N. E. 722); *Duvale v. Duvale,* 56 N. J. Eq. 375 (39 Atl. 687, 40 Atl. 440); *Kofka v. Rosicky,* 41 Neb. 328 (59 N. W. 788, 25 L. R. A. 207, 43 Am. St. Rep. 685); *Emery v. Darling,* 50 Ohio St. 160 (33 N. E. 715); *Hale v. Hale,* 90 Va. 728 (19 S. E. 739); *Bruce v. Moon,* 57 S. C. 60 (35 S. E. 415); *Newton v. Lyon,* 62 Kan. 306 (62 Pac. 1000); *Fogle v. Church,* 48 S. C. 86 (26 S. E. 99); *Allbright v. Hannah,* 103 Iowa 98. Nor is it open to doubt that the agreement between the testator and the holders of the contracts is supported by a sufficient consideration. The entry into possession, the agreement to pay taxes and interest, and the obligation assumed to pay the executors of their father's will the excess, if any, in the agreed value of their lands over their proportionate interest in his estate, are certainly sufficient for that purpose.

With this proposition established, let us turn to the final inquiry as to the nature of the property or right represented by this money in the hands of the executors. It is a recognized rule that under an enforceable contract for the sale of land, especially where possession is given to the vendee and the only condition precedent to the transfer of the legal title is the making of a deferred payment, the vendor's interest in the land becomes in equity that of a mortgagee

*4. ESTATES OF DECEDENTS: conveyance of real estate: conversion into personalty.*

rather than owner, and he thereafter holds such title in trust to secure the promised payment. *Champion v. Brown,* 6 Johns. Ch. (N. Y.) 398 (10 Am. Dec. 343); *Dorsey v. Hall,* 7 Neb. 464; *Holman v. Patterson* 29 Ark. 357; *Ellis v. Jeans,* 7. Cal. 409; *Linscott v. Buck,* 33 Me. 530; *Randall v. Constans,* 33 Minn. 329 (23 N. W. 530); *Strickland v. Kirk,* 51 Miss. 795; *Burkhart v. Howard,* 14 Or. 39 (12 Pac. 79). There are, of course, some exceptions to this rule, but we know of none under which these contracts now before us can be classed. If, treated as contracts of sale, the conversion of the testator's real estate into personalty was effected by his own act in his lifetime, the holders of these contracts become the owners of the equitable title to the lands, and, had they died before the testator, their interest in the lands would have descended to their heirs as realty, and not to their administrators as personalty. On the other hand, the legal title held or retained by a vendor is in equity considered a mere chattel interest passing, not to his heirs, but to his executors or administrators, to be held by them for no other purpose than as security for the payment of the debt. Champion v. Brown, *supra; Miller's Adm'r v. Miller,* 25 N. J. Eq. 365 *Johnson v. Corbett,* 11 Paige (N. Y.) 272; *Skinner v. Houghton,* 92 Md. 68, (48 Atl. 85, 84 Am. St. Rep. 485); *Bowen v. Lansing,* 129 Mich. 117 (88 N. W. 384, 57 L. R. A. 643, 95 Am. St. Rep. 427).

So, also, if we treat the contracts as agreements to devise. In such case instantly upon the death of the testator, if not, indeed, upon the making of the contracts, the holders of the contracts, having performed the conditions on their part, became the equitable owners of the several tracts of land in question, and thereafter the executors or heirs held the legal title for no other purpose than to secure the payment of the excess of the value of said lands over the shares of these children in the estate. No part of these lands belonged to the estate. The contracts did not contemplate that, in case they exceeded in value the shares of these

children, any part or share of such lands would be released
or turned back to the testator or his heirs, but that said chil-
dren should pay to the executors an amount equal to such
excess.    This obligation is one of debt in the nature of debt
for purchase money undertaken by these children in the life-
time of their father, and as such constituted a personal asset
in the hands of the executors.    It follows that as personalty
this fund must be held to pass by the terms of the will to the
children of Ward B. Strang undiminished and unburdened
by any of the charges imposed by other provisions of the will
upon the real estate of which the testator died siesed.

The decree of the district court is therefore reversed, and
cause remanded for the entry of a decree in harmony with
this opinion.    The several motions filed to strike parts of
the record and to dismiss the appeal are overruled.— *Re-
versed.*