IN RE ESTATE OF JOSEPH E. WILSON.

MAPLETON TRUST & SAVINGS BANK, Appellant, v. E. O. WILSON, Administrator, et al., Appellees.

No. 42479.

JUNE 23, 1934.

O. P. Bennett, and J. P. Shoup, for appellant.

Stewart & Hatfield, Prichard & Prichard, and B. H. Morrison, for appellee administrator.

STEVENS, J.—E. O. Wilson, as administrator of the estate of Joseph Wilson, filed his final report and asked for its approval and for his discharge and for the exoneration of his bond. The appellant, Mapleton Trust & Savings Bank, filed objections thereto. The objector was neither a beneficiary nor a creditor of the estate. It was a creditor and an assignee of E. O. Wilson. It set up a certain assignment made by E. O. Wilson and his wife, individually, of the one-seventh interest in the *personal property* of the Joseph Wil-

son estate, which would inure to E. O. Wilson as heir of the Joseph Wilson estate. The assignment was in terms as follows:

"For and in consideration of the sum of twenty-three hundred forty-eight and 46/100 dollars in hand paid by the Mapleton Trust & Savings Bank, Mapleton, Iowa, receipt of which is hereby acknowledged, we hereby sell, assign, transfer and set over to the Mapleton Trust & Savings Bank of Mapleton, Iowa, all our interest in and to the personal property in estate of Joseph E. Wilson, same being Probate No. 2664 as shown by the records of the clerk of the district court of Monona County, Iowa."

The objection raised was that E. O. Wilson had not performed his obligations as defined in said assignment. The defense upon which the case finally turned was, in part, that the personal property of the estate of Joseph Wilson was all absorbed in the payment of debts and expenses of the administration, and that E. O. Wilson received no benefit therefrom. Joseph Wilson died in 1928 intestate and without other heirs than brothers and sisters,—seven in number. E. O. Wilson, the administrator, was one of these, and, as such, was a beneficiary of the estate to the extent of one-seventh thereof. The estate consisted of a small farm in Monona county and another in Harrison county, and in $1,741 of personal property, including moneys. The debts were nominal and yet considerable. They involved an inheritance tax, and funeral expenses and cost of administration. Only one claim was filed against the estate. This was denied and finally defeated. The obligations chargeable against the estate including cost of administration and inheritance tax amounted to some extent in excess of $1,741. The Harrison county farm carried a mortgage of approximately $2,200. The mortgagee did not file his mortgage as a claim against the personal estate. The lien, however, rested upon the farm. By the mutual acquiescence of all the beneficiaries of the estate the administrator brought a proceeding in the probate court for authority to sell the Harrison county farm for the payment of debts,—the principal debt being the $2,200 mortgage. The proceeding took its regular course without controversy and resulted in the order prayed for. The farm was sold and the mortgage was paid out of the proceeds; likewise the unpaid balance not covered by the personal property. This left a balance in the hands of the administrator of approximately $4,200. In the course of his administration, the administrator collected also

$800 of real estate rentals. The net amount left in his hands for distribution was $5,040, which would award to each share the sum of $720. Upon this basis the final report was drawn. The appellant contends that it is entitled to receive from Wilson one-seventh of $5,040. Wilson contends that the assignment was confined by its terms to his one-seventh interest in the *personal property* of the Joseph Wilson estate.

The fighting question is: was the surplus proceeds of the sale of the land, so far as E. O. Wilson is concerned, to be deemed as personalty or as real estate? Title to real estate vests in the heirs immediately upon the death of the ancestor, so, in this case, E. O. Wilson, as an heir at law of Joseph Wilson's estate, became vested, upon the death of Joseph Wilson, of an undivided interest in the real estate, the proceeds of the sale of which is here involved. Reliance by appellee is based upon the familiar doctrine of conversion, a fiction which, for certain purposes, treats real estate as personalty or personalty as real estate. The purpose usually present is to preserve the inheritable quality of real estate, so that the title may not be divested from the previous owner, and the limit is the first devolution. It must be conceded that in a controversy between E. O. Wilson as an heir at law of Joseph Wilson's estate and other heirs, the proceeds of the sale of real estate sold for the purpose of paying debts of the estate, under the fiction of equitable conversion, retains its character as realty. In re Estate of Bernhard, 134 Iowa 603, 112 N. W. 86, 12 L. R. A. (N. S.) 1029; In re Estate of Strang, 131 Iowa 583, 106 N. W. 631; Hanson v. Hanson, 149 Iowa 82, 127 N. W. 1032; In re Dodge's Estate, 207 Iowa 374, 223 N. W. 106; Kolars v. Brown, 108 Minn. 60, 121 N. W. 229, 133 Am. St. Rep. 410; National Board of Christian Women's Board of Missions v. Fry, 293 Mo. 399, 239 S. W. 519; Pickens' Ex'rs v. Kniseley, 36 W. Va. 794, 15 S. E. 997; In re Lust's Estate, 140 Misc. 600, 251 N. Y. S. 556; Wolfe v. Lewisburg Trust & Safe Deposit Co., 305 Pa. 583, 158 A. 567, 81 A. L. R. 660; Kitchens v. Jones, 87 Ark. 502, 113 S. W. 29, 19 L. R. A. (N. S.) 723, 128 Am. St. Rep. 36.

The controversy here presented for solution has nothing to do with the devolution of property. No question of inheritance is involved. All concede the interest of E. O. Wilson in the real estate is as claimed by him, and that, as between himself and the remaining claimants to the estate, the proceeds of the sale retained its character as realty. The controversy here presented is between an

assignee of Wilson of his interest in the personal property of Joseph Wilson's estate and himself as an heir and as administrator of the estate. Thus, the proposition to be decided in nowise involves the doctrine of equitable conversion, as a careful examination of the following cases will disclose: Bolton v. Myers, 146 N. Y. 257, 40 N. E. 737; Hottal v. Ekart, 86 S. C. 341, 68 S. E. 576; Findley v. Findley, 42 W. Va. 372, 26 S. E. 433; Clifton v. Owens, 170 N. C. 607, 87 S. E. 502; Yerkes v. Yerkes, 200 Pa. 419, 50 A. 186; Buschbaum v. Hale (Ind. App.) 182 N. E. 93; Appeal of Wentz, 126 Pa. 541, 17 A. 875.

The devolution was complete as soon as the net proceeds of the real estate, that is, the sum for distribution to the heirs, came into the custody of E. O. Wilson as administrator. There is nothing in the opinion of the court in Kolars v. Brown, supra, or in any of the remaining cases cited by appellee, in conflict with the conclusion reached herein, but, on the contrary, they abundantly support such conclusion. The proceeds of the sale of the real estate was, in fact, personalty and not in any physical sense realty. Such proceeds were in the hands of the administrator for distribution, a share thereof to himself. No other heir had any right or claim thereto. He could deal with the same in any way he saw fit. He chose to make an assignment of his interest in the personal property of the estate to a creditor, the appellant herein. On the date of the assignment, the proceeds of the sale was on deposit in the bank. It would be carrying the fiction of equitable conversion very far to hold that he could not deal with his interest in the fund as personalty. It would be going just as far to hold, under the facts of this case, that he could deal with a third party in relation thereto as realty. The only personalty of the estate in which he was interested on the date of the assignment was the proceeds of the sale of the real estate. The parties must have intended to do something for the benefit of one or the other to the transaction. It is obvious that the purpose of appellee was to benefit his creditor by the assignment thereto of his interest in the proceeds of the sale of the real estate, and that as personalty:

None of the remaining propositions present grounds for affirmance. It would seem to be immaterial whether the sale by the administrator of the real property was improvidently ordered by the probate court or not. It was consummated upon authority obtained by Wilson, himself, as administrator, from the probate court. His

interest alone is involved herein. The assignment under which claimant demands distribution of the fund to it was by him in his personal capacity. The action taken by him was with full notice and knowledge of every material and essential fact in the transaction. No issue challenging the authority of the probate court to direct the administrator to distribute the fund to appellant is involved on this appeal. The case was tried below and is submitted in this court upon the issue as to the assignability of the claim. This court is content to dispose of the appeal upon the questions argued by counsel.

What is said herein is limited strictly to this issue. With the jurisdiction and power of the district court sitting in probate to render a judgment against the administrator and his bondsman in the fund, should the said administrator fail or refuse to comply with an order of the probate court directing him to make distribution to the assignee, we are not now concerned. No such question is before us. It follows that the order and ruling of the district court must be and it is reversed.—Reversed.

CLAUSSEN, C. J., and ALBERT, ANDERSON, MITCHELL, KINTZINGER, and DONEGAN, JJ., concur.

EVANS, J. (dissenting)—I do not concur in the majority opinion. The holding of the majority necessarily implies that the failure of E. O. Wilson individually to perform his personal contract with the objector is a breach of the administrator's bond and renders the surety liable for such breach. The duties of the administrator, as such, for the performance of which the bond was given, did not, and do not, include his duty to pay his individual debts to third parties, or to pay damages for breach of his individual contracts with third parties. If I am right in this assumption, then there is no legitimate assistance, which the probate court can extend to the appellant, and the appellant has no standing as an objector to the exoneration of the bond. Why then should the order of exoneration be reversed? The fact that the ruling below was put upon an untenable ground, if such, is not controlling. If the ruling itself was right upon any ground, it becomes our duty to save it and to put it upon its proper ground.