## *In re* SIMMONS.

Decided February 27, 1892.

55    485
69    241
69    242

55    485
h81   465
81    467
81    483

55    485
83    313

55    485
e87   505

*Partition of infant's land—Application of proceeds.*

> Where real property descended to an infant is sold pursuant to a decree in a suit for partition, and the infant subsequently dies during minority and intestate, the proceeds of the sale go to the infant's distributees as personalty, and not to his heirs as realty.

APPEAL from *Benton* Circuit Court.

JAMES M. PITTMAN, Judge.

John W. Simmons died intestate in 1886, possessed of real and personal property. His heirs at law were six sons, F. A., Thomas, John, Sam., Irvin and Richard, and a grandson, John Beach, only child and heir at law of Sallie Beach, his daughter, who, prior to her father's death, died intestate, leaving her husband, B. S. Beach, and child surviving. Simmons also left a widow, not the mother of his children, who relinquished dower and elected to take a child's part. Thus the widow, the grandchild and the children became entitled each to one-eighth of the estate of Simmons. Administration was had upon his personal estate which exceeded the amount of his debts.

In October 1886, the circuit court, by a decree in a partition suit between the widow, F. A., Thomas and John Simmons as plaintiffs, and Sam., Irvin and Richard Simmons, and John Beach, all minors, as defendants, ordered that intestate's lands be sold by a commissioner, and the proceeds divided among the parties. The commissioner accordingly sold the lands, the sales were approved, and the purchasers placed in possession. The commissioner held for distribution the sum of $4390.15.

After receiving his share from the commissioner, Thomas Simmons died intestate in 1888, leaving two children, and a widow, who became their guardian. The next year Richard Simmons died during minority, intestate and unmarried, leaving as his heirs his four brothers, and his nephew, John Beach,

and the two children of his brother, Thomas.  Before his death his guardian, Hart, had received from the commissioner his share in his father's estate, except $162.57, which the commissioner afterwards paid him.   In 1890 John Beach died, a minor, leaving surviving him his father, his four uncles, and the two children of Thomas Simmons.   Before his death his father, as his guardian, had received his entire share in his grandfather's estate, except $162.76, which remained in the commissioner's hands.   The four brothers received their respective shares in their father's estate.

Richard Simmons left no estate except an unexpended balance in his guardian's hands derived from his father's estate.   John Beach left an estate composed of an unexpended balance in his father's hands as his guardian, also the sum due him from the commissioner, and his share in the estate of Richard.   Neither of the two last-mentioned left any debts, and there was no administration upon their estates.

At the September term, 1890, of the probate court, Hart made final settlement as guardian of Richard Simmons.  The court refused to take jurisdiction of the $162.57 received by Hart from the commissioner after the death of Richard, charged the guardian with a balance of $971.02, declared the share of John Beach therein to be personal property, and distributed the same, being one-sixth part, to B. S. Beach as next of kin to John Beach.   One-sixth was given to each of the surviving brothers of Richard and one-sixth to the children of Thomas.   All parties in interest were before the court, and all appealed to the circuit court.

At the fall term, 1890, of the circuit court, the commissioner filed a final report, showing that he had distributed all the moneys collected by him to the different parties to the suit, except $162.76 due John Beach and a few cents due some of the others.   B. S. Beach asked for an order to have this sum paid to him as next of kin of John Beach.  All the other parties interested filed exceptions to the commissioner's report.   By consent of all parties the matters in controversy were consolidated with the appeals from the

probate court and heard by the court as one cause. The court approved the report of the commissioner, except the item of $162.57 paid to Hart as guardian after the death of Richard Simmons, leaving that sum, plus $162.76 due the estate of John Beach, still in his hands. Hart was ordered to repay the commissioner the $162.57 received by him after the death of his ward. The court re-stated the account of Hart as guardian and charged him with $54 additional, making a total of $1025.02. Of this amount the sum of $700 was received from the commissioner, as proceeds from the sale of the real estate.

B. S. Beach asked the court to declare that all moneys arising from sales of real estate under the decree in the partition suit were personal property, and distributable as such; that the $162.76 in hands of the commissioner belonging to the estate of John Beach is personal property, and belongs to him; that the share of John Beach in the $162.76 in the hands of the commissioner belonging to estate of Richard Simmons and the share of said John Beach in the $1025.02 in the hands of Hart as guardian, being one-sixth part of each sum, are also personal property, and distributable to himself as next of kin, without regard to whether the moneys were derived from the real or personal estate of John W. Simmons.

The court refused to make this declaration, but held that all moneys arising from the sales of the real estate of John W. Simmons in the partition suit and belonging to minors remained real estate and ancestral in its character during the minority of such minors, and, upon their death before arriving of age, should be distributed to their heirs at law in the same manner as ancestral real property of such minors would have descended; that the share of John Beach in such moneys should be distributed to his uncles and their descendants as ancestral property; and that, while the partition suit was pending and unsettled, the shares of minors in such proceeds would be treated as real property and upon

the death of the minors would descend to their heirs at law. Beach has appealed.

*L. H. McGill* for appellant.

1.    Originally, courts of chancery did not assume the power to direct the sale of real estate of a minor.    6 Hill, .415 ; Schoul., Dom. Rel. (3d ed.), secs. 356-7.    The reason assigned was that the rights of the infant's representatives and his power of disposition over his property should not be affected by any act of the court or guardian.    11 Ves., 278 ; 11 N. Y., 544 ; Schoul. Dom., Rel., sec. 357.

New York, Rhode Island, Virginia and North Carolina have special statutes providing that proceeds of sales of real estate of infants shall retain the character of real estate. 11 N. Y., 544 ; 47 *id.*, 21 ; 67 *id.*, 231 ; 47 Hun., 109; Knapp on Partition, 359, 361 ; 15 R. I., 330; 80 Va., 841 ; 6 Ire. Eq., 524.    Appellees rely upon these decisions and the old English decisions.    See also 67 N. Y., 231 ; 18 N. J. Eq., 346.    Incapacity to make an " election " is given as a reason why the proceeds of the sale remain impressed with the character of realty.    1 Duer, 286.    This seems to be a misapprehension of the principle of equitable conversion called "election."    This principle cannot be applied where land has actually been sold and converted into money.    Notes to 1 L. Cases Eq.  1151-2; 3 Wheat., 563 ; Bisph., Eq., sec. 322;  3 Pom., Eq., secs. 1175-6;  6 A. & E. Enc. Law, .672-3.    The true rule is that the representatives of an infant take his property in whatever form it may be found at his death, and the only question is whether the conversion was legal and binding.    1 Ld. Cases, Eq., sup.; *id.*,  1185 and notes ; 2 Ves. Jr., 69 ; 34 Beav., 504.; Bisph., Eq., sec. 316, note 1 ; L. R., 19 Eq., 113 ; 6 O., 59; 36 Oh. St., 17 ; 14 Pick., 108 ; 11 S. & R.,  224; 4 Barr, 359; 52 Pa. St., 449 ;  65 *id.*, 450 ; .69 *id.*,  219;  13 Phila. Rep., 304;  17 Atl. Rep., 875 ;  20 *ib.*, 623 ; 2 Woerner, Adm., 1070, 1233.    When there has been an actual conversion of real estate, the proceeds are personalty.    15 Ark., 680; 41 *id.*, 270 ; 48 *id.*, 557 ; Mansf.

Dig., secs. 4804, 4812. Personal property is distributed without inquiry as to how it was acquired. 15 Ark., 555; 17 Atl. Rep., 875 ; 20 *id.*, 623.

*Jas. A. Rice* for appellee.

The general rule is, in dealing with the property of infants, to impress it *during minority* with its *original character whatever changes* may have *actually* occurred. Story, Eq. Jur., sec. 1357, and notes; 11 Ves., 119; 47 N. Y., 26. If an infant's land is sold by order of court, the proceeds remain real estate until he is of age; but if he dies after coming of age, the proceeds are treated as personalty. 2 Perry on Trusts, sec. 611 ; 1 Johns. Chy., 561 ; 2 Green, Ch., 20; 2 Pa. St., 473; 2 Kent, *p. 230, note c, 13th ed; 11 N. Y., 548; Schouler, Dom. Rel., sec. 356; Tyler on Inf. and Cov., sec. 203; 2 Dev. & Bat., 144; 16 Barb., 556; 3 Pom., Eq. Jur., sec. 1167 (ed. 1883); 19 Vesey, 122-3; 17 N. Y., 569; 47 *id.*, 28; 3 Wheat., 563; Freem., Cot. and Par., sec. 549. When the law has impressed real properties and uses upon moneys, it is necessary, in order to *put an end to that impression*, that it be shown either that the party entitled to the property, and having a right to elect in what shape he will take it, *has declared that election*, or done some act denoting his intention in relation thereto. 7 Barb., 215 ; Snell's Eq. (1st Am. ed.), 197; 8 Ves., 235 ; 1 Ld. Case in Eq. (4th Am. ed.), 1118. Under partition statutes, the original character of the real estate is retained and impressed upon the proceeds of sale. Cases *supra*. An infant cannot elect, and his guardian has no power to waive a right. Schouler, Dom. Rel., sec. 379; 11 Vt., 40. See also 5 De Gex. McN. & G., 33 ; 1 Duer, 286; 3 Wheat., 563; 2 Story, Eq. Jur., secs. 790-1-2-3 and cases; 1 Cush., 206 ; 3 C. E. Green, Eq. (N. J.) 346; 1 P. Wm. 389, and note to 1 Lead. Cas. in Eq. (684); 2 Brown, Ch., 56; 1 Beatty, Ch., 266; 1 Green, Chy., 30; 78 N. C., 226; 3 Pom., Eq., sec. 1167 (ed. 1883). The land was ancestral; the partition proceedings did not change it into personalty; and the money properly went to the heirs at law.

COCKRILL, C. J.  The judgment in this case is based on the theory that the sale of the land under the decree in partition did not convert the minor's interest into personalty, but that the proceeds of the sale stood for the land impressed with the characteristics of realty when each of the minors died, because, not being *sui juris*, neither of them was capable of confirming the conversion of land into money, whether it was his original share of the common ancestor's estate or that which one inherited from the other.

The argument is ingenious and is supported with much learning, but much of the learning is obsolete by reason of the increased power of equity over the lands of minors; some of the cases cited are controlled by statute, and the argument itself is unsound.

The rule in such cases is stated tersely by Sir G. Jessel, M. R., in *Foster* v. *Foster*, L. R., 1 Ch. Div., 588, as follows: " If the conversion is rightfully made, whether by the court or a trustee, all the consequences of conversion must follow, if there be no equity in favor of the heir or any one else for re-conversion."

It may be that this statement of the rule is subject to the explanation or qualification that the conversion takes effect only to the extent of the purpose for which conversion was required—where, for example, a surplus remains from the proceeds of land sold to satisfy a decree of foreclosure. In such a case the conversion to raise a surplus over the decree and costs was not required, and was probably not intended by the court; and the rights of the parties in interest, it is held, remain the same as if no conversion had taken place, although the sale was rightful.  *Cooke* v. *Dealey*, 22 Beav., 196; *Oberle* v. *Lerch*, 18 N. J. Eq., 346; *Cronise* v. *Hardt*, 47 Md., 433; 2 Woerner's Administration, secs. 481, 562.

But that phase of the question is not presented by this case.

Here the object of the sale was to convert the lands into whatever amount of money they would bring.  The lands

could not be divided; and it was decreed that they should
be converted into money, which could be. The decree and
sale in pursuance thereof was authorized by statute and was
rightful. There was a conversion therefore of land into
personalty, and it must go, in the condition it is found at
the death of the person in whom it was vested, to his per-
sonal representative, unless the heirs can show an equity in
their favor for re-conversion. But the heir, equally with the
distributee, is a volunteer; and when he stands upon his
naked right as heir uncoupled with any other fact, there is
no equity in his favor as against the distributee. *Lenow* v.
*Fones*, 48 Ark., 557; *Inwood* v. *Twyne*, 1 Ambler, 418 and
note; S. C. 2 Eden, 147, 152 and note. The equities be-
tween them being equal, or rather there being no equities,
the money must go in the form in which it was at the death
of the owner—that is, as personalty.

This conclusion is sustained by the luminous judgment of
Ch. J. Shaw in *Emerson* v. *Cutler*, 14 Pickering, 108, and by
the opinions of a line of illustrious judges in Pennsylvania.
*Wentz's Appeal*, 126 Pa. St., 541, and previous cases. See
too *Holland* v. *Adams*, 3 Gray, 190–1 ; *Armstrong* v. *Miller*,
6 Ohio, 59; *Fowler* v. *Scott*, 25 L. T. N. S., 23; *Oberle* v.
*Lerch*, 18 N. J. Eq., at bottom of 351 and 352, and cases
cited.

Anciently the court of equity did not exercise the power
to divest a minor of the title in fee of his real estate. As
the court acted only *in personam*, an absolute decree for a
conveyance was not entered against an infant in any pro-
ceeding whether for partition or other purpose. Daniell's
Ch. Pl. & Pr. (4th ed.), p. 167; Freeman on Partition, etc.,
sec. 467 ; *Shumard* v. *Phillips*, 53 Ark., 43 ; 1 Story, Eq.,
sec. 652. His title might be divested by sale or otherwise
under a decree, upon the condition, which was inserted in the
decree, that the infant might disaffirm it and retake his land
after his majority. As the court did not assume to direct a
conversion of his land absolutely, it was held there was no
conversion until he elected that there should be, and he could

make no election until he attained his majority. Consequently the purchase money stood in lieu of the land and retained its impress for the full period of the infant's minority, going to the heir and not to the next of kin if the minor died. But the learning on that subject is no longer applicable because our courts are empowered to divest the minor of his estate of inheritance absolutely. *Shumard* v. *Phillips*, 53 Ark., *sup*. That power, as we have seen, carries the right to convert his land into personalty in a proper case without his assent, because it makes the conversion rightful and therefore absolute.

The provisions of the statute regulating proceedings in partition are applicable to infants. They may legally become parties to such a proceeding, and the statute declares that the judgment of partition "shall be conclusive on all the parties to the proceedings." Mansf. Dig., sec. 4802. Where a conveyance is made by the court's commissioner in pursuance of a decree directing the sale of the land for purpose of partition, it is declared that the conveyance "shall be a bar, both in law and equity, against all persons interested" who are parties to the suit. *Ib.*, 4811. As if to leave no doubt that minors were included in these general provisions, it is provided that no "guardian of any minor or person of unsound mind, party to the proceedings" shall be interested in the purchase of lands sold for partition; and further that the distributive shares of the parties in the proceeds of sale shall be paid "to them, their guardians or legal representatives." *Ib.*, 4808, 4812. It follows that the judgment in partition is as effective against an infant as against an adult, the only difference which the statute makes in any case being that the infant has a more extended right to set the decree aside for error upon a showing of merits. *Boyd* v. *Roane*, 49 Ark., 397; *Corker* v. *Jones*, 110 U. S., 317; *Allen* v. *Troutman's Heirs*, 10 Bush, 61. Even when he succeeds in setting a decree aside, he cannot take the land from an innocent purchaser at the judicial sale. *Boyd* v. *Roane*, 49 Ark., *sup*. He has therefore nothing.

like an election to reject the purchase money and retake the land. Nor does the money remain in court subject to a trust to be reinvested in land, and therefore impressed with the quality of real estate, as is provided in several acts of parliament. Note to *Fletcher* v. *Ashburner*. Ld. Cas., Eq., vol. 1, pt. 2, p. 864. In cases controlled by those acts the owner has his election to enforce the trust or affirm the conversion. But under our statute for partition there is no sort of election because there is but one right, and that is a right to the money. The title to it vests in the parties entitled to receive it as soon as the conversion is made, and it vests as personalty because there is an actual conversion.

The English cases cited in the notes of section 1167, 3. Pomeroy's Equity, and at page 363 of Knapp on Partition, as holding that no conversion is effected by the sale of an infant's land in partition, or under the right of eminent domain, are all founded on acts of Parliament, and have no application here. New York, New Jersey, North Carolina and other States have statutes enacting that no conversion shall be deemed to take place when an infant's lands are sold. Knapp on Partition, p. 359; *Oberle* v. *Lerch*, 18 N. J. Eq., 356-7. The decisions in those States are therefore not applicable.

Let the decree be reversed, and the cause remanded with instructions to enter a decree for the appellant in accordance with this opinion.