JOHN V. PHELAN *vs.* KATHERINE P. CONRON, administratrix, & another.

Norfolk.    May 5, 1948. — September 22, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, SPALDING, & WILLIAMS, JJ.

*Domicil. Adoption. Descent and Distribution. Conflict of Laws. Words,* "Through," "From."

Evidence showed that a widow formerly domiciled with her husband in Massachusetts, who had continued to live here with her sister after her husband's death, but who, upon her sister's death, had moved to Illinois to make her home with a niece, was domiciled in Illinois at the time of her death about six years later.

A status of adoption created by a decree of a Massachusetts court having jurisdiction would be recognized in Illinois, where the adopted child later died domiciled, but rights of inheritance in her personal property flowing from that status were governed by the Illinois law.

An adopted child, who died intestate domiciled in Illinois and who, under G. L. (Ter. Ed.) c. 210, § 7, had inherited a share of the personal estate of her brother by adoption upon his death intestate domiciled in Massachusetts, took such share "through" the adopting parents within art. II, § 14, of the probate act of Illinois and such property passed under that section, which provides that the adopt-

ing parents' "kindred shall take from the [adopted] child . . . such property as the child has taken from or through . . . the adopting parents . . . under intestate laws," and under § 11, Fifth, thereof, governing the distribution of intestate personalty, to grandchildren of the adopting parents, nephews and nieces by adoption of the adopted child, division being made per stirpes.

PETITION, filed in the Probate Court for the county of Norfolk on October 30, 1946, for partial distribution of the estate of Annie M. Dyer, "late of Brookline in said county of Norfolk, deceased, intestate."

The case was heard by *Davis*, J. Beside the facts stated in the opinion, the following appeared:. The eight own children of James Phelan were James, Katherine, William, John, Edmund, Michael, Joseph, and Mary. James, Katherine, and William died without issue; John died leaving a child Katherine P. Conron; Edmund died leaving children Priscilla P. Johnson and James Phelan, 2d; Michael died leaving children Louis V. Phelan, Prudence M. O'Brien, and Micaela C. Hickey; Joseph died leaving a child John V. Phelan; and Mary died leaving children James P. Dyer and Katherine D. O'Dowd.

A decree of the Probate Court for the county of Norfolk dated November 22, 1944, recited that it was on a petition by Katherine P. Conron for appointment as "administratrix of the estate of Annie M. Dyer late of Danville . . . in the State of Illinois having an estate in said county of Norfolk, deceased, intestate," and appointed her "administratrix of said estate."

.The decree entered on the petition for partial distribution recited that it was on "the petition for partial distribution of the estate of Annie M. Dyer late of Danville in the State of Illinois deceased intestate" and that it appeared that there was in the hands of the administratrix money "derived from the estate of" William Phelan, and ordered that such money be distributed one ninth each to the above named nine grandchildren of James Phelan.

*G. W. Russell*, for the respondent Conron.

*A. T. Rogers*, for the respondent Conron, administratrix.

*J. V. Phelan*, pro se.

SPALDING, J.   This is a petition for partial distribution of the estate of Annie M. Dyer, hereinafter called the intestate.   From a decree ordering partial distribution the respondent Katherine P. Conron appealed.[1]   The evidence is reported.

The facts, most of which are not in dispute, are these: On May 15, 1905, by a decree of the Probate Court of Essex County the intestate was adopted by James Phelan and his wife, Rebecca.   The intestate married John H. Dyer in 1909.   Dyer died in 1933.   James Phelan had eight children of his own, all of whom predeceased the intestate. The last one of these children to die was William, who died intestate in February, 1944.   At the time of his death he resided in Lynn.   The intestate died in October, 1944, leaving no issue.   At that time neither of her adopting parents was alive.   The petitioner is one of a group of nine grandchildren of James Phelan who are nieces and nephews by adoption of the intestate.   One of them, the respondent Katherine P. Conron, is also a blood niece and closest kindred by blood of the intestate.[2]

The respondent was appointed administratrix of the estate of the intestate by a decree of the Probate Court of Norfolk County dated November 22, 1944.   At the time of the hearing in the court below she had received, as administratrix, the sum of $13,244.60 from the estate of William. That sum represents the intestate's share in William's estate.   The controversy between the parties relates only to this property.   The petitioner takes the position that this property is to be divided equally among the nine nephews and nieces by adoption of the intestate.   The respondent, on the other hand, contends that this property should go to her as the nearest kindred by blood of the intestate. The decree appealed from ordered distribution to be made in accordance with the petitioner's contention.   Under it the respondent as a niece by adoption of the intestate

---

[1] There were two appeals by the respondent, one as administratrix of the estate of the intestate and one in her individual capacity as the alleged sole heir at law of the intestate.

[2] That arises by reason of the fact that the mother of Katherine P. Conron was a sister of the intestate and married one of the sons of James Phelan.

would receive one ninth of the property received from William's estate.

The only issue of fact which was disputed in the court below was whether the intestate was domiciled in Massachusetts or Illinois at the time of her death. If she was domiciled in Massachusetts the decree of the Probate Court, as the respondent concedes, was right. The law of Massachusetts leaves no doubt that the persons mentioned in the decree would inherit the property in question in the proportions therein stated.[1]

The respondent contends, however, that the intestate was domiciled in Illinois at the time of her death and that under the law of that State she would be entitled to the property in question. The judge made no report of material facts, but the evidence is reported and we are in a position to find the facts ourselves. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178.

The evidence on this issue may be summed up as follows: The intestate was born in Salem and prior to her marriage lived in Lynn. After her marriage she lived in Lynn and Boston. She was living in Boston at the time of her husband's death in 1933. From that time until the spring of 1939 she lived with the respondent about half of each year in Florida. When she was not in Florida she spent some time in Brookline, visited relatives at various places, and spent considerable time with the respondent who, since the spring of 1935, lived in Danville, Illinois. Shortly after February, 1938, following the death of her sister, Mrs. Hines, with whom she had been living in Massachusetts, the intestate moved out to Danville and made her home

---

[1] General Laws (Ter. Ed.) c. 210, § 7, so far as material, provides: "A person adopted in accordance with this chapter . . . shall stand in regard to the legal descendants, but to no other of the kindred of such adopting parent, in the same position as if . . . born to him [in lawful wedlock]. If the person adopted dies intestate, his property acquired by himself or by gift or inheritance from his adopting parent or from the kindred of such parent shall be distributed according to chapters one hundred and ninety and one hundred and ninety-six among the persons who would have been his kindred if he had been born to his adopting parent in lawful wedlock; and property received by gift or inheritance from his natural parents or kindred shall be distributed in the same manner as if no act of adoption had taken place. . . ." By G. L. (Ter. Ed.) c. 190, §§ 2 and 3 (5), the nieces and nephews, being of the same degree of kindred to the intestate, would share equally.

with the respondent. She spent the winter of 1939 in California with the respondent, returning with the latter in the spring of 1940 to Danville and remaining there until 1941. Thereafter the respondent and the intestate lived together in Brookline until the latter's death in 1944. The respondent during that period lived in furnished apartments and was there only temporarily while her son was a student at Yale College. During that period the respondent "retained . . . [her] connections and residence and domicil" in Danville. At the time of the intestate's death personal property belonging to her was stored in Illinois and she had an account in a bank there. The petitioner put in evidence the answers to interrogatories which he propounded to the respondent. Question 25b asked the respondent, in the event that she claimed that the intestate was domiciled in a State other than Massachusetts, to state "what facts . . . constitute a change of domicil by her to that State." The answer was as follows: "When Mary Hines (Mrs. Dyer's sister) died, I personally closed up Mrs. Hines' apartment, and all of her furnishings were disposed of. Mrs. Dyer had been living with her at the time of Mrs. Hines' death. Mrs. Dyer at that time moved out to Danville, Illinois, with me, taking with her all of her tangible and intangible possessions. After Mrs. Hines died, my home became Mrs. Dyer's home. She was my blood aunt and had always been very close to me. She brought me up from a baby. She wanted to live with me permanently and did. After she moved to Danville, Illinois, with me, all of her tax returns were filed in Illinois as were our returns, and to the best of my knowledge, she always looked upon Danville, Illinois, as being her permanent home until she died." The intestate was seventy-nine years old when she died. On the foregoing evidence we think it plain that the intestate at the time of her death was domiciled in Illinois. This conclusion is consistent with the recitals in the decree granting administration on the estate of the intestate as well as those in the decree now before us. Her estate, which consists entirely of personal property, must be disposed of in accordance with the laws of that State. G. L. (Ter. Ed.) c. 199, § 1.

The pertinent provisions of the Illinois statutes are found in the probate act, art. II, § 14, which, so far as material, reads as follows: "A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance, except that the adopted child shall not take property from the lineal or collateral kindred of the adopting parent per stirpes or property expressly limited to the body of the adopting parent. An adopting parent of a child lawfully adopted is deemed the parent of the adopted child for purposes of inheritance, *except that the parent and the parent's kindred shall take from the child and the child's kindred only such property as the child has taken from or through either or both of the adopting parents* by gift, by will, or under intestate laws with the accumulations, income, and profits thereof [emphasis supplied]. For purposes of inheritance from the child and his kindred . . . a child is deemed lawfully adopted when the child has been heretofore or is hereafter declared by any court to have been adopted or has been heretofore or is hereafter declared or assumed to be adopted child of the testator or grantor in any will or deed bequeathing, devising, or giving property to the child."

Under the law of Illinois the status of a child adopted in another State will be recognized in Illinois "unless such status, or the rights flowing therefrom, are inconsistent with or opposed to . . . [its] laws and policy." *Van Matre* v. *Sankey*, 148 Ill. 536, 559. *Keegan* v. *Geraghty*, 101 Ill. 26, 32. In the case last cited it was held that the rights of one adopted in Wisconsin to inherit from one who died domiciled in Illinois must be governed by the law of Illinois rather than by the law of Wisconsin. The rule in Illinois appears to be similar to the rule set forth in our own decision in *Ross* v. *Ross*, 129 Mass. 243, and to that formulated by the American Law Institute.[1] Thus, since the status of the intestate created by the law of Massachusetts does not appear to be inconsistent with or opposed to the laws or policy of Illinois, it would be recognized there. But

---

[1] See Restatement: Conflict of Laws, § 143, which provides: "The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law."

inasmuch as the intestate died domiciled in Illinois, the rights of inheritance flowing from her status are determined by the law of Illinois, at least as to personal property. We interpret the Illinois statute quoted above (art. II, § 14, of the probate act) to mean that the adopting parent and the parent's kindred may inherit from the adopted child and the child's kindred, but "only such property as the child has taken from or through either or both of the adopting parents by gift, by will, or under intestate laws . . .." It does not appear that this part of the statute has been interpreted by the courts of Illinois.[1]

The respondent's position in substance is that the word "through" as used in the statute means the same thing as "from" and that the petitioner and the other nieces and nephews of the intestate by adoption could inherit from her only such property as came to her directly from her adopting parents. We are of opinion that "through" is not used synonymously with "from" in the statute. The statute, as we construe it, means that when the child inherits property directly from his parent he takes "from" but not "through" such parent. When on the other hand he inherits property from a third person by reason of the relationship of that person and himself to the parent he takes "through" the parent. See *Cave's Estate*, 326 Pa. 358; *Berry* v. *Powell*, 47 Tex. Civ. App. 599, 603, affirmed in 101 Texas, 55. On this construction of the statute the respondent cannot prevail. William Phelan died domiciled in this Commonwealth. Under our law the intestate, as his sister by adoption, stood in the same position in regard to him as though she had been born to her adopting parents. G. L. (Ter. Ed.) c. 210, § 7. The relationship between each and the right to inherit from each other were through the parents. Since William left no issue his property would have gone to his father and mother, or either of them, if living at his death. G. L. (Ter. Ed.) c. 190, § 3. But both parents were dead; consequently his property would

---

[1] The respondent argues that her construction of the statute is supported by a recent decision of the Supreme Court of Illinois (*In re Estate of Tilliski*, 390 Ill. 273), but a careful reading of that decision satisfies us that it did not decide the question involved here.

go to "his brothers and sisters and to the issue of any deceased brother or sister by right of representation." It therefore can be said that the intestate took the property that came to her from William's estate "through either . . . of the adopting parents . . . under intestate laws" within the meaning of art. II, § 14, of the probate act. The petitioner and the other nieces and nephews of the intestate (including the respondent) as kindred of the adopting parents therefore were entitled under that section to inherit that property from the intestate.

The decree, although it was right in permitting the petitioner and the others named therein to share in property that came from William's estate, was erroneous in allowing them to share equally. If the matter were governed by the law of this Commonwealth the decree would have been right. G. L. (Ter. Ed.) c. 190, §§ 2 and 3 (5). But the result by the law of Illinois would be different. Article II, § 11, of the probate act provides that the personal property of one dying intestate shall be distributed as follows: "Fifth, when there is no surviving spouse or descendant but a parent, brother, sister, or descendant of a brother or sister of the decedent: the entire estate to the parents, brothers, and sisters of the decedent in equal parts, allowing to the surviving parent, if one is dead, a double portion and to the descendants of a deceased brother or sister per stirpes the portion which the deceased brother or sister would have taken if living." A distribution on the basis of this statute would be as follows: Katherine P. Conron one fifth, John V. Phelan one fifth, Priscilla C. P. Johnson one tenth, James Phelan (2d) one tenth, James P. Dyer one tenth, Katherine D. O'Dowd one tenth, Louis V. Phelan one fifteenth, Prudence M. O'Brien one fifteenth, and Micaela C. Hickey one fifteenth. The decree is to be modified so that the shares will be in these proportions and, as so modified, it is affirmed.

*So ordered.*