KATHRYN BELL TODD COOK, appellant, v. ESTATE OF KATE L.
TODD, deceased, ROY R. SWARTZ and GUY L. TODD,
administrators, appellees.

No. 49420.

(Reported in 90 N.W.2d 23)

May 6, 1958.

Rehearing Denied September 19, 1958.

Killmar & Reynoldson, of Osceola, for appellant.

Frank F. Wilson, of Mount Ayr, for appellees.

Oliver, J.—Kate L. Todd, a resident of California, died there, intestate, March 13, 1954. She left no spouse her surviving. She was survived by certain nephews, nieces, grandnephews and grandnieces, referred to herein as blood heirs, and by claimant, Kathryn Bell Todd Cook. The latter, a resident of California, had been there adopted by Howard Watterson Todd, intestate's son who had died there, without natural issue, in 1951. The other children of intestate had previously died during early childhood.

March 15, 1954, Guy L. Todd and Roy R. Swartz, nephews of Kate L. Todd, were appointed administrators of her estate by the district court of Ringgold County, Iowa. Their inventory listed as the only asset of the estate, $18,056.50 deposited in the Security State Bank of Mount Ayr, Iowa.

Thereafter Kathryn Bell Todd Cook made claim to Mrs. Todd's estate as her sole heir-at-law. The administrators resisted the claim and thereafter filed application for Decree of Heirship under chapter 267, Acts 56th G. A. (subsequently repealed by ch. 269, Acts 57th G. A.), alleging claimant did not inherit any of decedent's property for the reason that decedent's estate was composed of personal property only, the descent of which was governed by the law of California, under which law an adopted child inherits from, but not through, its adoptive parents. Claimant resisted this application, alleging part of decedent's property was real estate or the proceeds thereof which retained the

character of real estate for the purposes of distribution, and the applicable law was the law of Iowa, under which claimant would inherit such property.

Decedent, Kate L. Todd, had inherited an undivided interest as a tenant in common, in the real estate in question, from her brother Jesse Lininger who died in 1947 and whose estate was closed in 1948. In addition, the will of her brother Thomas Lininger, who died February 7, 1953, and whose estate was closed in September 1953, gave her an additional undivided interest as a tenant in common in said land and a share in certain personal property. Both these estates were probated in Ringgold County. Shortly after the death of Thomas Lininger, suit had been brought in Ringgold County to partition the land. Kate Todd was made a party defendant. Thereafter decree of partition was rendered ordering the sale of the land and appointing Roy R. Swartz and Guy L. Todd as referees. September 4, 1953, the referees reported they had entered into contracts to sell the land. September 5 the sales and contracts were approved by the court. Referees' deeds reciting payment of the purchase price were issued, approved by the clerk as directed by the court and placed of record November 30, 1953. The final report of the referees was filed December 3, 1953, and approved August 26, 1954.

The interest or share of Kate L. Todd in the proceeds of the partition sale was $11,235.18 of which $1556.16 was used to pay a mortgage Mrs. Todd had previously placed upon her interest in the land leaving a balance of $9679.02. This money, only, remained in the bank account of the referees Roy R. Swartz and Guy L. Todd at the time of Mrs. Todd's death. The shares of the others had been previously paid. Mrs. Todd's net share of the personal estate of Thomas Lininger's estate was $8377.48. At the time of Mrs. Todd's death that amount remained in the bank account of Roy Swartz and Zella Swartz, executors of the Thomas Lininger estate. Payments of the $9679.02 and the $8377.48 items were made to the administrators of the estate of Mrs. Todd after their appointment. These two items compose the $18,056.50 listed by the administrators of Mrs. Todd's estate.

The trial court rendered a decree of heirship, holding the only property in the estate was personal property, the situs of

which was in California, the domicile of intestate, and which would be distributed according to the law of California, and adjudging the blood heirs were the sole and only heirs and that claimant, Kathryn Bell Todd Cook, was not an heir to such property. Claimant has appealed.

I. It is generally held that the status of adoption created by the law of a state having jurisdiction to create it, will be recognized by the courts of another state, to such extent at least, as is not inconsistent with the laws or policy of the latter state. Mesecher v. Leir, 241 Iowa 818, 826, 827, 43 N.W.2d 149; Shick v. Howe, 137 Iowa 249, 114 N.W. 916, 14 L. R. A., N. S., 980; Restatement, Conflict of Laws, section 143.

The rights of inheritance are statutory. It is generally the rule that the descent of real property is governed by the law of the place where it is situated, while the distribution of personal property is governed by the law of the domicile of the intestate owner at the time of his death. In re Estate of Clemmons, 242 Iowa 1248, 1251, 49 N.W.2d 883, 885, and citations; In re Estate of Titterington, 130 Iowa 356, 106 N.W. 761; Caruth v. Caruth, 128 Iowa 121, 103 N.W. 103; 26A C. J. S., Descent and Distribution, sections 4 and 5; Restatement, Conflict of Laws, section 245.

The foregoing rules governing descent and distribution are applicable as well to the rights of inheritance which flow from the status of adoption. Shick v. Howe, 137 Iowa 249, 114 N.W. 916, 14 L. R. A., N. S., 980; Phelan v. Conron, 323 Mass. 247, 81 N.E.2d 525.

Restatement, Conflict of Laws, section 247, states: "Whether an adopted child is an heir and the extent to which he may inherit an interest in land is determined by the law of the state where the land is."

In re Estate of Colburn, 186 Iowa 590, 593, 595, 173 N.W. 35, 36, states: "Only personalty remains. * * * To determine who is entitled to succeed to such property as heirs of the owner, resort is had to the laws of the state in which the owner had his domicile at the time of his death, rather than to the laws of the locality in which such personalty happened to be located."

The parties stipulated: "That under the law of the State

of California, a child inherits from, but not through, its adoptive parents. Thus, under said law, an adopted child would inherit from its adoptive father, but not from its adoptive paternal grandmother, assuming the adoptive father predeceased the adoptive paternal grandmother." Estate of Calhoun v. Pettit, 44 Cal.2d 378, 282 P.2d 880, and the decisions therein cited, establish that this was the law of that state at the time of the death of Kate L. Todd. It may be observed that it is, at least, questionable whether this is now the law of California. In re Estate of Heard, December 1957, Cal., 319 P.2d 637, 643.

It is the rule in Iowa that an adopted child inherits through, as well as from, its adoptive parents. Shick v. Howe, 137 Iowa 249, 114 N.W. 916, 14 L. R. A., N. S., 980; McCune v. Oldham, 213 Iowa 1221, 240 N.W. 678. Hence, any Iowa real estate owned by decedent at her death would descend to appellant under the laws of Iowa, and any personal property, wherever actually located, would be distributed among decedent's blood heirs under the laws of California, decedent's domicile.

II. Appellant contends the share of Kate L. Todd in the proceeds of the partition sale remained real property in the hands of the referees in partition and in the hands of the administrators of her estate to whom it was delivered by the referees.

Pomeroy's Equity Jurisprudence, Fifth Ed., section 1167, page 495, refers to this type of conversion as follows: "In this aspect of the doctrine, the question to be examined is the exact converse of that which arises under the ordinary form of conversion. * * * The question then was, Is the property, although not actually converted, to be treated as converted? The question now presents itself, Is the property although *de facto* converted, to be treated to any extent as *not* converted?"

Tiffany—The Law of Real Property, Third Edition, section 306, page 526, states: "In case of a sale of land for the purpose of partition, while the proceeds of sale obviously belong to those who previously held title to the land, such proceeds have the character of personalty and not of realty, except in some jurisdictions, as regards the share of one not sui juris. Occasional statements that such proceeds have the character of realty mean

merely that the conversion does not affect the rights of the persons previously entitled. So when, upon the sale of land by an order of court or under a power, it is said that the proceeds, or surplus proceeds, of sale are to be regarded as land, this ordinarily means merely that the person or persons previously entitled to the fund in the shape of land do not lose their rights in the fund merely by reason of its change of form."

For text statements that the proceeds have the character of realty, see 40 Am. Jur., Partition, section 91; 18 C. J. S., Conversion, section 32.

Appeal of Wentz, 126 Pa. 541, 551, 17 A. 875, 878, states the expression that the proceeds of real estate remain realty, etc., is not accurate. "The money never is real estate, in law any more than in fact, but for certain purposes, and within certain limits, it is treated *as if* it was real estate. The purpose is to preserve the inheritable quality of the estate, so that the title may not be diverted from the previous owner, and the limit is the first devolution. * * * So far, therefore, from the money actually becoming real estate, and requiring a positive act of reconversion to restore it to its natural character of money, it never is real estate, and is only treated as such within a limit, which all the cases agree is the first transmission. * * *'It descended as personalty, which it actually was.' "

7 American and English Encyclopedia of Law (Second Ed.), Conversion and Reconversion, pages 473, 474, points out that as a general rule the *surplus* of the proceeds of land sold by court order for certain purposes retains its original character as realty:

"c. TIME OF CONVERSION.—In case of sales by order of court the decisions are conflicting as to the time of the conversion, some courts holding that the conversion dates from the order of sale, though there has in fact been no sale, whereas other courts held that there is no conversion before actual sale and compliance by the purchaser with the terms of sale."

21 American and English Encyclopedia of Law (Second Ed.), Partition, pages 1215 and 1216, states: "The object of regarding money as land is to allow it to vest in those who would have been entitled to it had it remained land. Hence, the doctrine is dropped after the first transmission, and in a second

transmission the money will pass to the personal representative."

According to 19 Am. Jur., Equitable Conversion, section 12, the conversion of an estate from real to personal by judicial sale is complete where the commissioner's sale is ratified by the court and the purchaser has paid the purchase money.

Section 29 states the decisions upon this point are not harmonious. "According to one view, the conversion takes place as soon as the order is passed. It has been held, however, that the conversion takes place, not when the order is passed, but when the sale is confirmed by the court and the purchaser has complied with the terms of the decree by paying the money if the sale is for cash, or by giving security if the sale is on credit."

18 C. J. S., Conversion, section 40, states: "Where land is converted into money, ordinarily either by act of parties or by operation of law, the proceeds are regarded in equity as personal property, and on the death of the party entitled thereto will pass to his personal representatives and not to his heirs."

Section 32 states: "On a sale of land in partition, the proceeds may be treated as converted into personalty on completion of the proceedings, although it has also been held that the proceeds of such sale retain their character as real estate, and that even though there is a conversion of land into personalty the rights of the parties stay unchanged. In any event, no conversion takes place by virtue of proceedings in partition before sale or an allotment and acceptance of the purparts; until then the interests of the several owners retain all the qualities of real estate."

To avoid misconception we will say the phrase "allotment and acceptance of the purparts" has reference to a partition in kind by division of the property into parcels and the allotment of one or more of these to each coparcener rather than the sale of the property and division of the proceeds.

The decisions of the courts of various jurisdictions, from which the foregoing statements were largely formulated, show some variances, due, in part, to differences in statutory provisions. In Iowa the procedure in partition is governed by Rules of Civil Procedure 270 to 298 inclusive. However, the statutes and rules of the various jurisdictions are similar, in general,

and detailed consideration of the pertinent statutes and rules of this or other jurisdictions does not appear necessary.

Fauntleroy v. Beebe, England—Court of Appeal (1911)— 2 Ch. 257, Ann. Cas. 1912A 506, 507, is here in point. We quote: "The point may be stated very shortly. An order was made by the court within its jurisdiction ordering an absolute sale of a particular property in which A, B and C are interested in equal shares. Before the sale takes place A dies intestate. Is the one-third share of A real estate or personal estate? That I think is the problem when all the fringe is got rid of."

The court held it was personal estate, basing its conclusion on both principle and precedent.

In the case of In re Estate of Linn, 137 Pa. 454, 20 A. 623, the death of intestate coparcener occurred after the real estate had been sold in partition and the deeds made to the purchasers. Held the money due from such purchasers was personalty.

An annotation in Ann. Cas. 1912A 509 lists other like English decisions and also decisions by American courts holding conversion takes place when the sale is confirmed by the court or when the sale is confirmed and the purchase price paid.

We quote from Buschbaum v. Hale, 97 Ind. App. 219, 222, 182 N.E. 93, 94: "Thus we arrive at the main question of this appeal—whether realty petitioned to be sold for partition by tenants in common is converted into money when the sale is confirmed or whether it retains its character as realty until proceeds are actually distributed."

The decision follows a decision by Judge Story in Foster v. Hilliard, Federal Case No. 4972, 1 Story 77, 3 L. R. 175, and holds the conversion to money took place when the sale was confirmed.

This appears to be the rule in various jurisdictions: McLean v. Leitch, 152 N. C. 266, 67 S.E. 490; Greenough v. Small, 137 Pa. 132, 20 A. 553, 21 Am. St. Rep. 859; In re Simmons (Beach v. Simmons), 55 Ark. 485, 18 S.W. 933; Findley v. Findley, 42 W. Va. 372, 26 S.E. 433, 434, 435; Moran v. Adkerson, 168 Tenn. 372, 79 S.W.2d 44, 45; Newcomer v. Orem, 2 Md. 297, 56 Am. Dec. 717; Hankins v. Hankins, Admr., 173 Ky. 475, 191 S.W. 258.

In re Estate of Wilson (Mapleton Trust & Savings Bank v. Wilson), 218 Iowa 368, 370, 371, 255 N.W. 489, 490, involved the surplus remaining after the sale of intestate's land to pay debts. As already pointed out, for certain purposes such surplus, in the hands of the administrator, would retain its original character as real estate. We stated:

"The purpose usually present is to preserve the inheritable quality of real estate, so that the title may not be divested from the previous owner, and the limit is the first devolution. * * *

"The devolution was complete as soon as the net proceeds of the real estate, that is, the sum for distribution to the heirs, came into the custody of E. O. Wilson as administrator."

Kolars v. Brown, 108 Minn. 60, 61, 62, 121 N.W. 229, 230, 133 Am. St. Rep. 410, states: "The surplus * * * retains the character of real estate for the purpose of determining who is entitled to receive it, * * *. It has been held that, although the fund goes to the person who would have taken it as real estate, he takes it as money, and not as real estate, which means no more than that, after the death of the heir, the money thus received goes to his personal representative as personal property."

In Town of Shrewsbury v. Murphy, 333 Mass. 290, 130 N.E.2d 559, decedent's real estate was sold to pay debts, and her sole heir died before the surplus became available. Held, the money did not retain the characteristics of real estate, but passed to the administrator of the estate of such heir.

Carson, Pirie, Scott & Co. v. Long, 219 Iowa 444, 449, 257 N.W. 815, holds a referee in partition is subject to garnishment after but not before he has received the proceeds of the sale and the court has, by order, directed distribution thereof.

Albright v. Moeckley, 209 Iowa 1304, 230 N.W. 351, held intestate's share in the proceeds of a partition started during his life and completed after his death should have been paid to the administratrix of his estate.

III. Appellant relies upon a statement in In re Assessment of Taxation (Dallas County v. Boyd), 138 Iowa 583, 590, 116 N.W. 700, 703, 17 L. R. A., N. S., 1220, 1225, 1226: "Until the proceeds are paid to the owners of the real estate, these

proceeds partake of the nature of realty; in other words, there is no conversion as a general rule into personalty until the money is actually paid to those who are entitled to it."

The question in that case was whether contracts of a referee for the sale of real estate in partition were assessable to him for taxation. The decision held they were not so assessable, for several reasons, some of which were valid. However, the quoted statement is not supported by the authorities cited for it, overlooks the sound reasoning upon which the general rule is based, and is contrary to such rule. Hence, it is overruled.

■ We hold the money in the hands of the administrators of the estate of Kate L. Todd, as her share of the proceeds of the partition sale of the real estate, is personal property. The money paid her administrators, as her share of the personal property of the estate of Thomas Lininger, also is personal property.

IV. Appellant contends the referees in partition and the administrators of the Thomas Lininger estate intentionally failed to deliver to Kate L. Todd the moneys belonging to her and held by them, and wrongfully retained possession of the same for some months, until after her death and the appointment of the administrators in Iowa. The record does not show Kate Todd was mentally incompetent or was under guardianship. It does indicate she was confined in a hospital in California during this period. Assuming the evidence supports appellant's contention, such wrongful withholding would not change the character of the money from personal property to real estate.

The laws of California in effect at the time of the death of Kate L. Todd govern the distribution of all her property held by the Iowa administrators. Under those laws appellant may not inherit from Kate L. Todd. Hence, the adjudication of the trial court was correct.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.