# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

In re Estate of
Dennis Freeland Edwards,
deceased

January 14, 2009

Case Nos. CL78932, (Fiduciary) A4933

BY JUDGE ROSSIE D. ALSTON, JR.

This matter came before the Court on the Plaintiff's Complaint for Aid and Direction to Determine Heirs. The Court heard oral argument at a hearing on November 18, 2008, and, because the matter involved some interesting legal issues, took the matter under advisement.

*Background*

The relevant facts are not in dispute.

Dennis Freeland Edwards, a resident of Prince William County, died intestate on February 21, 2007. Carole J. Gosling-Holley duly qualified before the Clerk of this Court as the Administrator of the Estate of Dennis Freeland Edwards ("Estate") on May 7, 2007.

The Defendants, Chad Edwards, Shaun Edwards, and Mark Ray-Jones (hereinafter referred to as "the Sons") are the biological sons of Mr. Edwards and are without question, lawful heirs-at-law of the Estate. Mr. Edwards' fourth child, a daughter, Carmen Denise Edwards, was born on April 4, 1968, during the decedent's marriage to Pamela Joann Edwards. Pamela Joann Edwards and Mr. Edwards were divorced on March 19, 1971. Pamela Edwards subsequently wed David Cash, Jr., who thereafter lawfully adopted Carmen Denise Edwards, now Carmen Denise Cash. The Adoption Decree for

Carmen Davida Cash was entered on June 7, 1973, in the Court of Common Pleas of Allegheny County, Pennsylvania, Orphans' Court Division. The decree also provided that "the parental rights of Dennis Freeland Edwards are terminated on the ground that he has failed to perform his parental duties for a period in excess of six months. . . ."

The instant case was initiated by Ms. Gosling-Holley in her capacity as Administrator for Mr. Edwards' estate. She filed a "Complaint for Aid and Direction to Determine Heirs" in the Circuit Court of Prince William County. All parties and "interested individuals" are properly before this court.

The Sons argue that Ms. Cash is not an heir-at-law of Mr. Edwards and that her adopted status bars her from intestate succession, as she was adopted pursuant to Pennsylvania law.

The Sons' factual position is articulated in the Plaintiff's, Ms. Gosling-Holley's, post-trial pleadings. Ms. Gosling-Holley avers that she, "as fiduciary to Defendants in her capacity of Administrator, does not take a stance regarding any disagreements between the Sons and [Ms. Cash]. . . . That being said, [Ms. Gosling-Holley] cannot take a position that is not supported by law." (internal citations omitted).

Ms. Cash argues that, while the status of the child is fixed by the state of adoption, questions of descent and distribution are controlled by the law of the decedent's domicile at the time of the decedent's death; therefore, Ms. Cash is an heir-at-law of Mr. Edwards.

### Questions Presented

1. How is the *status* of a child adopted in Pennsylvania determined for purposes of intestate inheritance in Virginia?

2. Is the right of an adopted child to inherit controlled by the law of the state of adoption or by the law of the domicile of the decedent?

3. Is Carmen Davida Cash an heir-at-law of Dennis Freeland Edwards?

### Analysis

### 1. *How Is the Status of a Child Adopted in Pennsylvania Determined for Purposes of Intestate Inheritance in Virginia?*

The parties agree that the state that grants an adoption controls the "status" of the adopted child, although their rationale for reaching this conclusion differs. Ms. Gosling-Holley maintains that the Virginia courts recognize the adoptions of other states based on the principle of *comity*, while

Ms. Cash argues that the status created by the adoption of another state is determined through the Full Faith and Credit Clause of the United States Constitution, and that Virginia courts recognize the adoptions of other *countries* based on comity.

For consideration of the issue, it is important to understand the subtle distinctions between the principles of comity and the Full Faith and Credit Clause of the United States Constitution.

*Black's Law Dictionary* defines comity as a "courtesy among political entities (as nations, states, or courts of different jurisdictions), involving esp. mutual recognition of legislative, executive, and judicial acts." *Black's Law Dictionary* 261 (7th ed. 1999).

> Comity is not a matter of obligation. It is a matter of favor or courtesy, based on justice and good will. It is permitted from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return.

*Eastern Indem. Co. v. Hirschler, Fleischer, Weinberg, Cox & Allen*, 235 Va. 9, 14 (1988) (quoting *McFarland v. McFarland*, 179 Va. 418, 430 (1942) (internal quotations and citations omitted)).

The principles that must be considered by a trial court before affording comity to a foreign court order include a determination that:

> 1. the foreign court had personal and subject matter jurisdiction to enforce its order within its own jurisdiction;
> 2. the procedural and substantive law applied by the foreign court was reasonably comparable to that of Virginia;
> 3. the foreign court's order was not falsely or fraudulently obtained;
> 4. the enforcement of the foreign court's order was not contrary to the public policy of Virginia or prejudicial to the rights of Virginia or her citizens.

*America Online, Inc. v. Nam Tai Elecs., Inc.*, 264 Va. 583, 591-92 (2002) (citing *AOL v. APTC*, 261 Va. at 361, and cases cited therein).

The applicable analysis in considering the Full Faith and Credit Clause of the United States is similar to the principles of comity but is not precisely the same. The United States Constitution, Article IV, § 1, states:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the effect thereof.

The effect of this Clause is to require states to give effect to the legislative acts, public records, and judicial decisions of other states. This constitutional mandate was codified in 1790 when Congress provided that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." 28 U.S.C. 1738.

The Commonwealth of Virginia recognizes this principle in Virginia Code § 8.01-389(B) which provides: "Every court of this Commonwealth shall give such records of courts not of this Commonwealth the full faith and credit given to them in the courts of the jurisdiction from whence they come."

However, there is a limitation to the application of the Full Faith and Credit Clause:

> A judgment of a court in one State is conclusive upon the merits in a court in another State *only if* the court in the first State had power to pass on the merits — had jurisdiction, that is, to render the judgment. Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. *If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given.*

*Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704-05 (1982) (internal citations and internal footnote omitted) (emphasis added).

There are no Virginia cases factually "on-all-fours" determining the issue of the application of the Full Faith and Credit Clause of the United States Constitution in circumstances such as these. However, the basic principles of comity and the Full Faith and Credit Clause dictate that the resolution of the instant matter be decided on application of the Full Faith and Credit Clause of the United States Constitution. Nothing in the record

indicates that the Pennsylvania court entering the adoption decree did not have jurisdiction over the subject matter of the relevant parties; thus, this Court must give the Pennsylvania adoption decree full faith and credit.

*In arguendo*, if the principle of comity did apply, rather than the Full Faith and Credit Clause, this Court would afford comity to the Pennsylvania adoption decree, as it satisfies the four requirements provided above. First, the Pennsylvania court had personal and subject matter jurisdiction to enforce its order. Second, the procedural and substantive law applied by the foreign court was reasonably comparable to that of Virginia. Third, nothing in the record shows that the Pennsylvania adoption was falsely or fraudulently obtained. Finally, the enforcement of the Pennsylvania court's order was not contrary to the public policy of Virginia, nor is it prejudicial to the rights of Virginia or her citizens.

This last requirement bears further discussion. Critical in the court's determination is the consideration of the public policy of the "competing jurisdictions." If the public policies of Pennsylvania and Virginia diverge, a different conclusion would be required by this court.

In Pennsylvania, in matters of adoption, the court's ultimate responsibility is to determine "what will be in the best interests of the adoptees. 'At all stages of the proceedings, the best interest of the child is the paramount consideration'." *In re Adoption of J.E.F.*, 902 A.2d 402, 412 (Pa. 2006) (quoting *In re Adoption of Hess*, 608 A.2d 10, 13 (Pa. 1992). Similarly, in Virginia, the primary consideration of the court in adoption proceedings is the best interests of the child. *Doulgeris v. Bambacus*, 203 Va. 670 at 674 (1962) (citing *Newton v. Wilson*, 199 Va. 864, 868 (1958); *Bidwell v. Sorley*, 194 Va. 135, 140-41 (1952); 2 Am. Jur. 2d, *Adoption* § 61, p. 910; 2 C.J.S., *Adoption of Children*, § 39-b, p. 425). In the 1962 case *Doulgeris v. Bambacus*, the Virginia Supreme Court found that a Greek adoption was contrary to Virginia's public policy, as it was merely done for the convenience of the adopted parents and without regard for the best interests of the adopted child. 203 Va. at 675 ("[T]his type of adoption through which Doulgeris claims is so different from the adoption contemplated by our statutes that it would be contrary to the public policy of this State to hold that she is a 'legally adopted child' who is entitled to inherit under [the Virginia Code]."). In contrast, the Pennsylvania adoption statutes are not clearly contrary to the public policy of the Commonwealth. As a matter of fact, the public policies are nearly identical.

Accordingly, based on the controlling authority referenced by the Supreme Court of Virginia in reaching its decisions in cases involving comity and the Full Faith and Credit Clause, this court holds that the Pennsylvania

adoption statutes are controlling on this issue and that the *status* of the adoptive child is to be determined under Pennsylvania law and therefore entitled to deference through the Full Faith and Credit Clause of the United States Constitution.

## 2. *Is the Right of an Adopted Child To Inherit Controlled by the Law of the State of Adoption or the Law of the Domicile of the Decedent?*

The court next turns to the question of whether the right of an adopted child *to inherit* is controlled by the law of the state of adoption or the law of the domicile of the decedent. In Pennsylvania, where Ms. Cash was adopted, adopted children do not have the right to inherit from their biological parents:

> For purposes of descent by, from, and through an adopted person, he shall be considered the issue of his adopting parent or parents and not the issue of his natural parents: Provided, That if a natural parent shall have married the adopting parent, the adopted person for purposes of descent by, from, and through him shall also be considered the issue of such.

20 Pa. Stat. § 2108 (1975).

Virginia's legislative approach on this issue is diametrically opposed to the Pennsylvania scheme as its statutes do not sever the relationship between an adopted child and her biological parents. There are two applicable Virginia provisions that deal with the termination of the rights of the biological parents and the right of an adopted child to inherit from their biological parents. They are both found in Virginia Code § 64.1-5.1:

> (1) An adopted person is the child of an adopting parent and not of the biological parents, except that adoption of a child by the spouse of a biological parent has no effect on the relationship between the child and either biological parent. . . .
>
> (5) Unless otherwise specifically provided therein, an order terminating residual parental rights under § 16.1-283 shall terminate the rights of the parent to take from or through the child in question but the order shall not otherwise affect the rights of the child, the child's kindred, or the parent's kindred to take from or through the parent or the rights of the parent's kindred to take from or through the child.

The long standing principle in Virginia is "a decedent's personal property passes according to the law of the state where he was domiciled at his death, but his real estate passes according to the law of the state where it lies." *French v. Short*, 207 Va. 548, 551 (1966) (citing Va. Code Ann. § 64-55 (1950); *Rinker v. Trout*, 171 Va. 327 (1938); Minor, *Conflict of Laws*, § 143 (1901); *See also Doulgeris*, 203 Va. at 673.

The 1962 Supreme Court of Virginia *comity* case, *Doulgeris v. Bambacus*, regarding the status conferred by Greek adoption, is also instructive as to how Virginia courts apply the status created by foreign adoptions in cases of intestate inheritance:

> According to the great weight of authority, *"for purposes of determining the descent and distribution of the property of an intestate decedent and the right of an adopted child to share in such estate, a status of adoption acquired under the law of one state will be recognized and given effect in another state where, in the case of real property, the decedent's property is located or, in the case of personal property, where the decedent was domiciled, provided that the foreign court had jurisdiction of the adoption proceedings and also to fix the status of the child with respect to the adoptive parents,* and that the recognition of that status as fixed by the foreign decree is not inconsistent with, and will not offend, the laws of the public policy of the forum."

203 Va. 670, 673 (1962) (quoting 2 Am. Jur. 2d, *Adoption*, § 114, p. 956; citing *Cook v. Todd's Estate*, 90 N.W.2d 23, 25 (Iowa 1958); *Phelan v. Conron*, 81 N.E.2d 525, 527 (Mass. 1948); *Zanzonico v. Neeld*, 111 A.2d 772, 775 (N.J. 1955); *Guarantee Bank & Trust Co. v. Gillies*, 83 A.2d 889, 895 (N.J. 1951)) (emphasis added).

Pursuant to the principles set forth in *French* and *Doulgeris*, this court is bound to apply Virginia's descent and distribution laws to all of Mr. Edwards' personal property and to any real property owned by Mr. Edwards in Virginia at the time of his death.

### 3. *Is Carmen Davida Cash an Heir-at-Law of Dennis Freeland Edwards?*

The answer to this question is dictated by the analysis previously articulated.

358

Thus, because this court is duty-bound to recognize the status of a child adopted in Pennsylvania as a lawful determination and because this Court must apply the Virginia descent and distribution laws to Mr. Edwards' estate, this Court must reach the conclusion that Carmen Davida Cash is an heir-at-law of Dennis Freeland Edwards, a domiciliary of the Commonwealth of Virginia at the time of his death, for purposes of the distribution of all of Mr. Edwards' personal property and any real property owned by Mr. Edwards in Virginia at the time of his death.